**In the Matter of the Termination of the Parent/Child Relationship of M.H.C., a Minor Child,**

v.

**Tonya HILL, Natural Mother, and Michael Corley, Natural Father.**

No. 46A03–0012–JV–470.

Court of Appeals of Indiana.

June 27, 2001.

Donald W. Pagos, Michigan City, IN, Attorney for Appellant.

Alan J. Sirinck, Friedman & Associates, P.C., LaPorte, IN, Attorney for Appellee.

## OPINION

MATHIAS, Judge.

Michael Corley ("Father") appeals the trial court's termination of his parental rights to M.H.C. He raises two issues on appeal, which we restate as:

I. Whether the petition to terminate Father's parental rights should have been dismissed as a matter of law; and

II. Whether termination of Father's parental rights was in the best interests of M.H.C.

We affirm.

### Facts and Procedural History

The facts most favorable to the trial court's ruling reveal that M.H.C., who is the subject of these proceedings, was born on January 31, 1999. The child's mother, Tonya Hill, ("Mother"), and Father are not married. Thirty-eight-year-old Father has acquired an extensive criminal history during his adult life, including eight felony convictions, most of which are drug-related, as well as two probation revocations. Father has been incarcerated continuously since September 26, 1998, and has consequently been unable to provide care or support for M.H.C. at any point in the child's life.

On March 3, 1999, Mother left five-week-old infant M.H.C. with an acquaintance and has had no contact with the child since. The LaPorte County Office of Family and Children (OFC) was contacted on March 5, 1999, and M.H.C. was placed in the home of Father's sister, Gloria Wells ("Paternal Aunt"), in May of 1999. M.H.C. has remained with Paternal Aunt since that initial placement more than two years ago. As a result of these circumstances, M.H.C. was adjudicated a child in need of services (CHINS) on June 4, 1999, by the LaPorte County Circuit Court.

M.H.C. has thrived in the care and custody of Paternal Aunt, where he has developed a sibling-like relationship with her other children. As of the twelve-month review, Paternal Aunt indicated a willingness to adopt M.H.C. The trial court subsequently included placement of the child for adoption by Paternal Aunt as part of the permanency plan in its order of March 6, 2000.

The instant termination proceedings were initiated on May 12, 2000, and the trial court entered an order terminating Father's parental rights to M.H.C. on November 15, 2000. The trial court noted in its findings the initiative taken by Paternal Aunt in her care of M.H.C., the fact that she has taken the child to visit Father at the correctional facility and her intention to allow them to spend time together after Father's release. M.H.C. remains in the care and custody of Paternal Aunt, who plans to adopt him pursuant to the trial court's order. Father appeals.

## I. Standard of Review

The involuntary termination of parental rights is an extreme measure that terminates all rights of the parent to his or her child and is designed to be used only as a last resort when all other reasonable efforts have failed. *Matter of A.N.J.*, 690 N.E.2d 716, 720 (Ind.Ct.App.1997). The Fourteenth Amendment to the United States Constitution provides parents with the rights to establish a home and raise their children. *Id.* However, the law allows for termination of those rights when the parties are unable or unwilling to meet their responsibility as parents. *Id.* This policy balances the constitutional rights of the parents to the care and custody of their children with the State's limited authority to interfere with these rights. *Id.* at 718. Because the ultimate purpose of the law is to protect the child, the parent-child relationship must give way when it is no longer in the child's best interest to maintain the relationship. *Id.* at 720.

We will not set aside the trial court's judgment terminating a parent-child relationship unless it is clearly erroneous. *Egly v. Blackford County DPW*, 592 N.E.2d 1232, 1234–35 (Ind.1992). In determining whether the evidence is sufficient to support the judgment terminating parental rights, this court neither reweighs the evidence nor judges the credibility of witnesses. *Id.* at 1235.

Where the trial court has entered findings of fact, the reviewing court may affirm the judgment on any legal theory supported by the findings. *Tanton v. Grochow*, 707 N.E.2d 1010, 1012 (Ind.Ct. App.1999). However, our affirmance must be consistent with all of the trial court's findings of fact and reasonable inferences drawn therefrom. *Id.* The trial court's findings and judgment will be set aside only if they are clearly erroneous. *Doe v. Daviess Co. Div. of Children and Family Servs.*, 669 N.E.2d 192, 194 (Ind.Ct.App. 1996). Findings of fact are clearly erroneous when the record lacks any evidence or reasonable inferences to support them. *Crowley v. Crowley*, 708 N.E.2d 42, 54 (Ind.Ct.App.1999).

## II. Mandatory Dismissal

Father contends that the petition to terminate his parental rights to M.H.C. should have been dismissed as a matter of law because M.H.C. was in the custody of Paternal Aunt. In support of his argument, Father cites Indiana Code section 31–35–2–4.5(d)(1).[1]

In 1998, the General Assembly enacted Public Law No. 35 1998, which be-

---

1. Father also argues that his case qualifies under subsection (d) of the statute because no family services were offered to him due to his incarceration, even though he had completed the reunification requirements established by the trial court. In support of this contention, Father cites a portion of the statute that he identifies as "(4)(B)." Appellant's Brief at 15. We find this issue waived because Indiana Code section 31–35–2–4.5 no longer contains subsection (4)(B) and because Father fails to make a cogent argument. *See* Ind.Code § 31–35–2–4.5 (Supp.2000); Ind.Appellate Rule 8.3(A).

came effective July 1, 1999, as Indiana Code section 31–35–2–4.5. The new state law was a response to 1997 amendments to the federal Adoption Assistance and Child Welfare Act seeking "to ensure that children did not spend long periods of their childhoods in foster care or other settings designed to be temporary." *Phelps v. Sybinsky,* 736 N.E.2d 809, 813 (Ind.Ct.App. 2000), *trans. denied.* The statute applies to cases in which a trial court has determined, under Indiana Code section 31–34–21–5.6, that reasonable efforts to reunify the child and a parent or to preserve the child's family are not required or in which a CHINS has been under OFC supervision for fifteen out of twenty-two months and has been placed in the home of a relative or other qualifying home. Ind.Code § 31–35–2–4.5(a) (1998). If one of these two conditions applies, the statute requires the attorney for the OFC or the prosecuting attorney to file a petition to terminate parental rights. *Id.; Phelps,* 736 N.E.2d at 814. Through this requirement children in foster care, who qualify under the statute, can be adopted without having to wait six months from the date of the dispositional decree, as was required prior to the amendment.

■ Although the statute provides no exceptions to the requirement that a petition be filed, it does provide for dismissal of the petition if one of the following circumstances enumerated in subsection (d) exists:

(1) That the current case plan prepared by or under the supervision of the county office of family and children under I.C. 31–34–15 has documented a compelling reason, based on facts and circumstances stated in the petition or motion, for concluding that filing, or proceedings to a final determination of, a petition to terminate the parent-child relationship is not in the best interests of the child.

A compelling reason *may* include the fact that the child is being cared for by a custodian who is a parent, stepparent, grandparent, or responsible adult who is the child's sibling, aunt, or uncle or a relative who is caring for the child as a guardian.

(2) That:

(A) I.C. 31–34–21–5.6 is not applicable to the child;

(B) the county office of family and children has not provided family services to the child, parent, or family of the child in accordance with a currently effective case plan prepared under I.C. 31–34–15 or a permanency plan or dispositional decree approved under I.C. 31–34, for the purpose of permitting and facilitating safe return of the child to the child's home; and

(C) the period for completion of the program of family services, as specified in the current case plan, permanency plan, or decree, has not expired.

(3) That:

(A) I.C. 31–34–21–5.6 is not applicable to the child;

(B) the county office of family and children has not provided family services to the child, parent, or family of the child, in accordance with applicable provisions of a currently effective case plan prepared under I.C. 31–34–15, or a permanency plan or dispositional decree approved under I.C. 31–34; and

(C) the services that the county office of family and children has not provided are substantial and material in relation to implementation of a plan to permit safe return of the child to the child's home.

Ind.Code § 31–35–2–4.5(d)(1)(3) (1998)(emphasis added).

■ Father argues that, because (d)(1) applies to his case, the OFC was required

to file a motion to dismiss the petition to terminate his parental rights to M.H.C. We disagree.

In order to effect involuntary termination of a parent-child relationship, the OFC must allege in its petition that:

(A) *one (1) of the following exists:*

(i) *the child has been removed from the parent for at least six (6) months under a dispositional decree;*

(ii) *a court has entered a finding under IC 31–34–21–5.6 that reasonable efforts for family preservation or reunification are not required,* including a description of the court's finding, the date of the finding, and the manner in which the finding was made; *or*

(iii) *after July 1, 1999, the child has been removed from the parent* and has been under the supervision of a county office of family and children *for at least fifteen (15) months of the most recent twenty-two (22) months;*[2]

(B) there is a reasonable probability that:

(i) the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied; or

(ii) the continuation of the parent-child relationship poses a threat to the well-being of the child;

(C) termination is in the best interests of the child; and

(D) there is a satisfactory plan for the care and treatment of the child.

Ind.Code § 31–35–2–4(b)(2)(emphasis added).

The instant OFC petition filed on May 12, 2000, sought to terminate the parental rights to M.H.C. of both Mother and Father. In its petition, the OFC alleged:

1. That [M.H.C.] (d.o.b. January 31, 1999), was found to be a child in need of services (CHINS) on June 4, 1999.

2. That a Dispositional Hearing was held on June 4, 1999.

3. That Tonya Hill is the natural mother of the child, and Michael Corley is the alleged father.[3]

4. That natural mother, Tonya Hill, left the child with an elderly friend on or about March 3, 1999, and indicated that she would be back in a few hours; however natural mother never returned.

5. That the child was taken into custody due to the fact the elderly friend could no longer care for the child.

6. That at the time of removal from mother's care, the alleged father Michael Corley was incarcerated at the LaPorte County Jail.

7. That at the time of the filing of this petition, the natural mother's whereabouts are unknown, as she has had no contact with the child in over a year.

8. That a *hearing on no reasonable efforts was held on June 10, 1999,* and said petition was granted in part, pursuant to I.C. 31–34–21–5.6(b)(4), since mother's parental rights had been involuntarily terminated with regard to her two other children.

9. That the alleged father is presently incarcerated at the Westville Correctional Facility and is not expected to be released until at least October of 2001.

10. That additionally *the child will have been removed from his parents' home fifteen of the last twenty-two months* and the fact that no reasonable

---

2. Subsections (A)(ii) and (A)(iii) were added as a result of the same legislation that produced Indiana Code section 31–35–2–4.5.

3. Paternity was established subsequent to the filing of the petition to terminate parental rights.

efforts against mother has been granted, the Office of Family and Children can proceed with a petition for termination of parental rights.

11. That the alleged father has never had the child in his custody, and as such there is no bond.

12. That a Court Order issued on March 6, 2000, ordered that the Office of Family and Children should file a petition to terminate parental rights.

13. That *the child has been removed from his parent for at least six (6) months under a dispositional decree.*

14. That the conditions which resulted in the child's removal have not been remedied.

15. That the continuation of the parent/child relationship poses a threat to the well-being of the child.

R. at 16–7(emphasis added).

It is clear from the language of paragraphs eight and ten that a petition to terminate pursuant to Indiana Code section 31–35–2–4.5 was *required* with regard to Mother only. The trial court had not made a finding under Indiana Code section 31–34–21–5.6 with regard to Father, and fifteen of the most recent twenty-two months had not yet elapsed. Consequently, no provision of Indiana Code section 31–34–2–4.5 applied to Father. Instead, the OFC alleged that M.H.C. had been "removed from his parent for at least six (6) months under a dispositional decree," which satisfies the requirement of Indiana Code section 31–34–2–4(A). R. at 17.

■■■ Moreover, even if Indiana Code section 31–34–2–4.5(a) could be construed to apply to Father's case, the OFC was not *required* to dismiss the petition against him pursuant to subsection (d)(1). This

statutory provision for dismissal requires documentation in the OFC case plan of a "compelling reason" to conclude that termination of the parent-child relationship is "not in the best interests of the child." Ind.Code § 31–34–2–4.5(d)(1). The provision further states that "[a] compelling reason *may* include the fact that the child is being cared for by . . . the child's . . . aunt." *Id.* (emphasis added). However, this is permissive language and the trial court found no compelling reason regarding M.H.C. and Father. As a result, the OFC was not required as a matter of law to dismiss the petition to terminate Father's parental rights to M.H.C. under 31–34–2–4.5.[4]

### III. Best Interest of M.H.C.

Father contends that it is not in the best interests of M.H.C. to terminate Father's parental rights. Father asserts that if the trial court had "simply made [Paternal Aunt] permanent guardian" then "everything would have been fine." Appellant's Brief at 17. We disagree.

■■■ One of the necessary allegations the OFC must establish in order to effect an involuntary termination of a parent-child relationship is that the "termination is in the best interests of the child." Ind. Code § 31–35–2–4(b)(2)(C).

In its findings and conclusions, the trial court determined:

9. It has been established by clear and convincing evidence that termination of the parent-child relationship between [M.H.C.], the minor child, and both of his parents, Tonya Hill and Michael Corley, is in the best interests of [M.H.C.], for the following reasons:

---

**4.** Father does not contest the sufficiency of the other elements the OFC was required to demonstrate in order to terminate his paren-

tal rights to M.H.C.; therefore, we do not address them here.

a) [M.H.C.] has been in the continuous care of Gloria Wells since May of 1999; termination of the parental rights will insure that relationship continues without interruption, providing [M.H.C.] with the stability and continuity of care that affords his continued development;

b) during his period of care and custody with Gloria Wells, [M.H.C.] has thrived and experienced normal healthy development; he has developed a sibling relationship with Gloria Wells' children, age 12 and 17, that is a positive force in his development;

c) Gloria Wells has exhibited an understanding of the importance of family that will serve [M.H.C.] well; she took the initiative as a relative to gain care and custody of [M.H.C.] from other foster care, has taken [M.H.C.] to the correctional facility to visit his father, and is not opposed to continuing to permit her brother—natural father Michael Corley—from spending time with [M.H.C.] in the future.

d) permanency in [M.H.C.'s] life will be achieved by the termination of parental rights; both Tonya Hill and Michael Corley, based on their habitual patterns of past conduct, pose distinct threats to the permanency and stability necessary to [M.H.C.'s] continuing physical, psychological, and emotional development.

R. at 53–4. In paragraph seven of its findings, the trial court outlines the "habitual patterns of past conduct" of both Mother and Father to which it alludes in subsection (d) above. R. at 54. Father's past conduct is comprised of eight felony convictions including the one for which he is currently incarcerated.[5] Also included in the trial court's findings regarding Fa-

ther's past conduct is the fact that he has five other children, with whom he has very little, if any, contact, and three of whom are wards of the state of California. All of this evidence clearly supports the trial court's finding that it would be in M.H.C.'s best interests to terminate Father's parental rights. We therefore find no abuse of discretion.

### Conclusion

The OFC was not required as a matter of law to dismiss the petition to terminate Father's parental rights. The evidence is sufficient to support the trial court's determination that it is in the best interests of M.H.C. to terminate Father's parental rights.

Affirmed.

BAILEY, J., and BAKER, J., concur.

---

5. Father is not scheduled to be released until at least October 27, 2001. However, his release date could be as late as October 27, 2004.