In re The Matter of the Involuntary Termination Of Parent–Child Relationship Of D.L. and C.L., Minor Children and their Mother, Sheila Lewis and the Alleged Father David Lewis,

Sheila Lewis, Appellant–Respondent,

v.

Marion County Office of Family and Children, Appellee–Petitioner and Cross–Appellant,

Child Advocates, Inc., Appellee (Guardian Ad Litem) and Cross–Appellant.

No. 49A04–0312–JV–633.

Court of Appeals of Indiana.

Sept. 8, 2004.

Steven J. Halbert, Indianapolis, IN, Attorney for Appellant.

Janice E. Smith, Indianapolis, IN, Attorney for Appellee & Cross–Appellant Marion County Office of Family and Children.

Jennifer Balhon, Indianapolis, IN, Attorney for Appellee & Cross–Appellant Child Advocates, Inc. (Guardian Ad Litem).

## OPINION

VAIDIK, Judge.

### Case Summary

Sheila Lewis appeals the trial court's involuntary termination of her parental rights to her then four-year-old child. The Marion County Office of Family and Children ("MCOFC") and Guardian Ad Litem cross-appeal the trial court's denial of the

petition to involuntarily terminate Sheila's parental rights to her then eight-year-old child. Because the MCOFC proved by clear and convincing evidence all four elements required for termination with respect to the youngest child, we affirm the trial court's termination of Sheila's parental rights to that child. Moreover, because the evidence shows that Sheila is a drug abuser who has not maintained a stable source of income with which to support her children and because separation is not in the best interests of the children, who have lived together since the youngest child's birth in 2000, we conclude that the trial court erred in not also terminating Sheila's parental rights to her oldest child. We therefore affirm in part and reverse in part and remand.

### Facts and Procedural History

Sheila is the biological mother of D.L., born July 22, 1995, and C.L., born May 16, 2000. Robert Lewis is the biological father of D.L. and the legal father of both children. David Coleman is the alleged biological father of C.L.

In November 1997, before C.L. was born, Sheila entered into a Service Referral Agreement with the MCOFC based on the neglect or endangerment of D.L. Specifically, Sheila had exposed D.L. to the use of an inhalant, toluene, in their home.

In February 2001, the MCOFC filed a Children in Need of Services ("CHINS") petition. At the time the MCOFC filed this petition, D.L. was five years old and C.L. was nine months old. In the petition, the MCOFC alleged that Sheila had not been providing adequate supervision of D.L. and C.L. Specifically, Sheila, on more than one occasion, left the children with various caregivers for long periods of time without returning to pick them up as scheduled. The MCOFC also alleged in the petition that Sheila had failed two drug tests since December 2000 and was cur-

rently involved in criminal proceedings. An accompanying affidavit detailed the times Sheila left the children with the various caregivers and included D.L.'s statement to the case manager that Sheila left him and C.L. home alone "all the time." Exhibit 1, p. 6. The accompanying affidavit also revealed that Sheila had been arrested for possession of a controlled substance and prostitution and that D.L. had poor attendance in kindergarten. Sheila subsequently admitted to the allegations contained in the CHINS petition, and the trial court adjudged the children to be CHINS. D.L. and C.L. were subsequently placed in foster care with Arthur and Mary Haralson, where they have remained since.

In April 2001, the trial court entered a Participation Decree, which required Sheila to secure and maintain a legal and stable source of income adequate to support all household members; to obtain and maintain suitable housing; and to comply with various services, including home-based counseling, parenting assessment, parenting classes, drug and alcohol assessment and all recommendations stemming from that assessment, visitation with the children on a consistent and regular basis, and contacting her caseworker every week.

The initial permanency plan was for Sheila to be reunited with her children; however, nearly a year after the CHINS petition was filed, Sheila had not completed the recommendations from her drug and alcohol assessment and was testing positive for drugs. As a result, the MCOFC did not "feel that she was going to live a drug free lifestyle for her children." Tr. p. 47. Therefore, the permanency plan was changed to adoption by the Haralsons, and in January 2002, the MCOFC filed a Petition for Involuntary Termination of the Parent–Child Relationship. Specifically, the MCOFC sought "to terminate the parent-child relationship be-

tween [D.L.] and [C.L.], minor children[,] and Sheila Lewis, Robert Lewis, and David Coleman." Appellant's App. p. 12.

Sheila's termination hearing was held in June 2003. At the time of the hearing, D.L. was seven years old and C.L. was three years old. At the hearing, Sheila testified that she had not been employed for at least one year and when she was employed, it was inconsistent. Sheila also testified that she used crack from at least 1996 to 2001 and that she also abused the prescription drug Xanax. Since the CHINS proceeding, Sheila participated in several drug treatment programs, but she continued to have relapses every few months. In fact, Sheila tested positive for cocaine in May 2003, just a month before the hearing. Sheila also confirmed that she had been arrested for possession of a controlled substance and prostitution.

One of the case managers, Mark Bass, testified at the hearing. Bass testified that Sheila did not follow the recommendations of her drug and alcohol assessment. Specifically, he explained that Sheila "goes through periods of where she'll do well and then she'll come up positive or she'll ... miss classes and it's just sporadic of missing classes and showing up and testing positive." Tr. p. 45. As a result of Sheila's positive drug tests, the home-based counselor suspended the home-based counseling, which Sheila was required to undergo; therefore, Sheila also did not successfully complete the home-based counseling. Bass also testified that Sheila's employment history was "sporadic," thereby affecting her ability to provide for the children. Id. at 51. As for Sheila's relationship with the children, Bass explained that she had "bonded with [D.L.] ..., [but] the bond with [C.L.] is ... not as strong." Id. at 55. However, Bass testified that D.L. gets along "[g]reat" with the Haralsons and is also

"bonded with them" and "seems happy." Id. at 60. Likewise, Bass testified that C.L. is "[v]ery bonded" to the Haralsons. Id. at 61.

Sheila's termination hearing was continued to August 2003. At this hearing, the testimony of another case manager, Julie Brown, was substantially similar to that of Bass. Brown added, however, that Sheila had not contacted her every week, which she was required to do, and that Sheila had failed to attend two sessions of her outpatient drug treatment program just the week before. Brown emphasized that the MCOFC's "overriding concern ... is that [Sheila] has [had] several relapses [in] drug and alcohol use. She has been unable to complete a program in its entirety." Id. at 76. Brown also expressed concern about Sheila's ability to support the children due to her poor employment history. As for Sheila's relationship with the children, Brown said that D.L. was bonded with Sheila but that C.L. was bonded with Mr. Haralson.

The Guardian Ad Litem for the children, Marolo Dale, also testified at the August 2003 hearing. Dale testified mainly about the children's relationship with the Haralsons. Dale explained that although initially D.L. had not done well with the Haralsons—getting bad grades and often asking when he was going back home—now both D.L. and C.L. "are doing good." Id. at 110. Indeed, Dale characterized the interactions between the Haralsons and D.L. and C.L. as "[v]ery appropriate and loving" and added that they "seemed like a natural family." Id. at 111. Dale testified that although D.L. told him "that he wanted to be with his mom, ... he was fine where he was if he couldn't go back home." Id. at 112. Dale also explained the importance of permanency for the children and that being "in limbo" is "not a healthy state for them to be in." Id. at 113. He

concluded that adoption was the recommended permanency plan because the children had been away from their mother for over two years, but Sheila was still testing positive for drugs.

Following the hearings, the trial court issued an order with findings of fact in October 2003. The relevant findings are set forth below:

4. [C.L.] has been removed from his parents for at least six [months] under a dispositional decree.

5. There is a reasonable probability that the conditions that resulted in [C.L.'s] removal will not be remedied.

6. There is a reasonable probability that the continuation of the parent-child relationship poses a threat to [C.L.'s] well-being.

7. Termination is in the best interests of [C.L.].

8. There is a satisfactory plan for the care and treatment of [C.L.].

9. As to [D.L.], the evidence is insufficient to prove the allegations of the Petition for Termination.

Appellant's App. p. 11. The trial court did not make any specific findings regarding D.L. Accordingly, the trial court denied the petition for the involuntary termination of the parent-child relationship with respect to D.L. However, the trial court terminated the parent-child relationship between C.L. and Sheila, Robert Lewis, and David Coleman. Sheila appeals, and the MCOFC and Guardian Ad Litem cross-appeal.

## Discussion and Decision

This case presents an unfortunate situation in that the trial court terminated Sheila's parental rights with respect to one child but not the other, thereby separating siblings who have always lived together.

As a result of this split decision, Sheila appeals the termination of her parental rights to C.L., and the MCOFC and Guardian Ad Litem cross-appeal the trial court's denial of the petition for the involuntary termination of the parent-child relationship with respect to D.L. We first address Sheila's appeal.

### I. Sheila's Appeal

Sheila contends that the trial court erred in terminating her parental rights to C.L. Indiana Code § 31–35–2–4(b)(2) sets forth the elements that must be alleged in a petition to terminate parental rights as follows:

(b) The petition must:

\* \* \* \*

(2) allege that:

(A) one (1) of the following exists:

(i) the child has been removed from the parent for at least six (6) months under a dispositional decree;

\* \* \* \*

(B) there is a reasonable probability that:

(i) the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied; or

(ii) the continuation of the parent-child relationship poses a threat to the well-being of the child;

(C) termination is in the best interests of the child; and

(D) there is a satisfactory plan for the care and treatment of the child.

The MCOFC must prove each of these elements by clear and convincing evidence. Ind.Code § 31–37–14–2; *In re Termination of Parent–Child Relationship of*

*L.S.*, 717 N.E.2d 204, 208 (Ind.Ct.App. 1999), *reh'g denied, trans. denied.*

A trial court need not wait until children are irreversibly influenced by a deficient lifestyle such that their physical, mental, and social growth are permanently impaired before terminating the parent-child relationship. *J.K.C. v. Fountain County Dep't of Pub. Welfare*, 470 N.E.2d 88, 93 (Ind.Ct.App.1984). Indeed, the purpose of terminating parental rights is not to punish parents but to protect children. *In re Termination of Parent–Child Relationship of D.G.*, 702 N.E.2d 777, 781 (Ind. Ct.App.1998). When the evidence shows that the emotional and physical development of a child in need of services is threatened, termination of the parent-child relationship is appropriate. *In re L.S.*, 717 N.E.2d at 208.

We reiterated in *M.H.C. v. Hill* that:

> [t]he involuntary termination of parental rights is an extreme measure that terminates all rights of the parent to his or her child and is designed to be used only as a last resort when all other reasonable efforts have failed. The Fourteenth Amendment to the United States Constitution provides parents with the rights to establish a home and raise their children. However, the law allows for termination of those rights when the parties are unable or unwilling to meet their responsibility as parents. This policy balances the constitutional rights of the parents to the care and custody of their children with the State's limited authority to interfere with these rights. Because the ultimate purpose of the law is to protect the child, the parent-child relationship must give way when it is no longer in the child's best interest to maintain the relationship.

750 N.E.2d 872, 875 (Ind.Ct.App.2001) (citations omitted). Thus, we will not set aside a trial court's judgment terminating a parent-child relationship unless we determine that it is clearly erroneous. *Id.* Findings of fact are clearly erroneous when the record lacks any evidence or reasonable inferences to support them. *Id.* In determining whether the evidence is sufficient to support the judgment terminating parental rights, this Court neither reweighs the evidence nor judges the credibility of witnesses. *Id.*

Sheila argues that the MCOFC failed to meet its burden in that it did not prove by clear and convincing evidence that there is a reasonable probability that (1) the conditions that resulted in the children's removal will not be remedied and (2) the continuation of the parent-child relationship poses a threat to the well-being of the children, both of which are located in Indiana Code § 31–35–2–4(b)(2)(B). Sheila does not challenge the other elements.

Indiana Code § 31–35–2–4(b)(2)(B) is written in the disjunctive. Thus, it requires the trial court to find only one of the two requirements of subparagraph (B) by clear and convincing evidence. *See In re Termination of Parent–Child Relationship of L.V.N.*, 799 N.E.2d 63, 69 (Ind.Ct. App.2003). Here, the trial court found both requirements, both of which Sheila now challenges. Because of the high stakes involved in a termination proceeding such as this, we address both requirements even though we are not required to do so. *See In re Termination of Parent–Child Relationship of J.W.*, 779 N.E.2d 954, 962 (Ind.Ct.App.2002), *trans. denied.*

**A. There Is a Reasonable Probability that the Conditions that Resulted in C.L.'s Removal Will Not Be Remedied**

To determine whether the conditions that resulted in C.L.'s removal will be remedied, the trial court must look to

Sheila's fitness at the time of the termination proceeding. *See In re L.V.N.*, 799 N.E.2d at 69. In addition, the court must look at the patterns of conduct in which the parent has engaged to determine if future changes are likely to occur. *Id.* When making its determination, the trial court can reasonably consider the services offered to the parent and the parent's response to those services. *Id.*

Here, the MCOFC presented substantial evidence that Sheila has failed to follow the recommendations of her drug and alcohol assessment. That is, Sheila has missed scheduled sessions of her drug treatment programs and has tested positive for drugs. In fact, just a month before the June 2003 termination hearing, when Sheila's children had been removed from her for almost two and one-half years, Sheila tested positive for cocaine. Sheila also tested positive for drugs at various other times during those two-plus years. According to Sheila's own testimony, she relapses every couple of months. Additionally, during the two months in between the two termination hearings, at a time when Sheila should have been working hard on following the recommendations of her drug and alcohol assessment, Sheila missed two scheduled sessions of her drug treatment program. Although Sheila has her own house, she did not have a job at the time of the hearing, and she relies upon others to pay her mortgage and utilities. Despite Sheila's professed desire to be reunited with her children, she has yet to kick her drug habit and to maintain a stable source of income adequate to support her children. The MCOFC proved by clear and convincing evidence that there is a reasonable probability that the conditions that resulted in C.L.'s removal will not be remedied, and the trial court's finding on this point is not clearly erroneous.[1]

## B. There Is a Reasonable Probability that the Continuation of the Parent–Child Relationship Poses a Threat to the Well–Being of C.L.

 The MCOFC also presented clear and convincing evidence that there is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of C.L. The evidence shows that Sheila is a drug abuser who has had over two years to get her life together and stop using drugs. Despite this long period of time, Sheila tested positive for cocaine just one month before the termination hearing. Additionally, she has not maintained a stable source of income with which to support her children. Despite this uncontroverted evidence, Sheila claims on appeal that the MCOFC failed to prove how her drug abuse poses a threat to the well-being of her children. However, it is clear that when Sheila had custody of her children and was abusing drugs, she would leave her children for long periods of time with various caregivers without picking them up as scheduled. She also was arrested for drug and prostitution crimes. Also, in 1997, Sheila exposed D.L. to an inhalant in their home, and as a result, she entered into a Service Referral Agreement with the MCOFC.

---

1. On appeal, Sheila claims that the condition that resulted in the children's removal—that she left them for long periods of time with a caregiver without picking them up as scheduled—has been remedied because the MCOFC presented no evidence that she would leave her children again if they were reunited. However, the MCOFC also alleged in the CHINS petition that Sheila had tested positive for drugs. We find that Sheila's abuse of drugs and leaving her children for long periods of time with a caregiver without picking them up as scheduled are directly related. Because the MCOFC presented substantial evidence that Sheila was abusing drugs as recently as one month before the termination hearing, it has sufficiently proved this requirement.

The inevitable conclusion is that when Sheila abuses drugs, she endangers her children in a variety of ways. At the termination hearings, the MCOFC presented evidence that Sheila had not yet abandoned her life of drug abuse, despite being given over two years to do so. The trial court's finding that there is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of C.L. is not clearly erroneous. We therefore affirm the trial court's termination of Sheila's parental rights to C.L.

## II. MCOFC and Guardian Ad Litem's Cross-Appeal

■■■■■ The MCOFC and Guardian Ad Litem contend that the trial court erred in denying the petition for the involuntary termination of the parent-child relationship with respect to D.L.[2] Essentially, they argue that there are no significant differences between the children that warrant terminating Sheila's parental rights to C.L. but not to D.L. Sheila has failed to file a reply brief or respond to the MCOFC and Guardian Ad Litem's cross-appeal in any way.[3] Where an appellant fails to file a response to a cross-appeal, the cross-appellant may prevail if its brief presents a prima facie case of error. *Sand Creek Country Club, Ltd. v. CSO Architects, Inc.*, 582 N.E.2d 872, 875–76 (Ind.Ct.

App.1991). Prima facie error is "error at first sight, on first appearance, or on the face of it." *Id.* at 876.

Here, there are only two differences between D.L. and C.L.: (1) D.L. was five years old and C.L. was nine months old when they were removed from their mother, and D.L. was eight years old and C.L. was four years old at the time of the trial court's order; and (2) D.L. is bonded with his mother and the Haralsons while C.L. is bonded only with the Haralsons. The issue then becomes whether these differences justify a contrary result for D.L. and C.L. This issue is complicated by the fact that the trial court did not indicate why it treated D.L. and C.L. differently.

As noted above, the MCOFC must prove by clear and convincing evidence that:

(1) the child has been removed from the parent for at least six months;

(2) there is a reasonable probability that:

 (a) the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied; or

 (b) the continuation of the parent-child relationship poses a threat to the well-being of the child.

(3) termination is in the best interests of the child; and

**2.** The MCOFC and Guardian Ad Litem also challenge the trial court's failure to terminate Robert Lewis' parental rights to D.L. Although the trial court entered one order with respect to Sheila, Robert Lewis, and David Coleman, it held a separate hearing for Robert Lewis and David Coleman on March 14, 2003. *See* Tr. p. 68 ("Okay, we heard evidence on March 14th in relation to Mr. Robert Lewis and David Coleman and [the said matter] as to those gentlemen is taken under advisement pending conclusion of the case in relation to Ms. Sheila Lewis."); *see also id.* at 4. Because the MCOFC and Guardian Ad Litem do not provide us with a transcript of

this hearing, we are unable to address this issue on appeal. Nevertheless, we note that Robert Lewis did not appear at the March 14th hearing, was not represented by counsel at the hearing, and is not a party to this appeal. *See* Appellant's App. p. 7, 9.

**3.** The MCOFC and Guardian Ad Litem filed with this Court a Motion for Court to Proceed to Deliberation. We proceed to deliberation in light of the fact that Sheila has failed to respond to the MCOFC and Guardian Ad Litem's cross-appeal.

(4) there is a satisfactory plan for the care and treatment of the child.

Ind.Code § 31–35–2–4(b)(2).

The transcript shows that for three out of the four statutory elements the MCOFC was required to prove, the evidence for both D.L. and C.L. is identical. Both D.L. and C.L. were removed from Sheila for at least six months. The fact that Sheila is unlikely to remedy her drug problem, thereby posing a threat to the well-being of her children, is equally damaging to both D.L. and C.L. Finally, the plan for the care and treatment of D.L. and C.L. is the same: adoption by the Haralsons—a family that both have lived with since 2001. This leaves the fourth statutory element of the best interests of the child.

■ In determining what is in the best interests of a child, the trial court is required to look beyond the factors identified by the Office of Family and Children and to the totality of the evidence. *In re Termination of Parent–Child Relationship of D.D.*, 804 N.E.2d 258, 267 (Ind.Ct.App. 2004), *trans. denied; McBride v. Monroe County Office of Family & Children*, 798 N.E.2d 185, 203 (Ind.Ct.App.2003). In doing so, the trial court must subordinate the interests of the parent to those of the child involved. A child's need for permanency is an important consideration in determining the best interests of a child, and the testimony of the child's guardian ad litem supports a finding that termination is in the child's best interests. *McBride*, 798 N.E.2d at 203.

We determine that the MCOFC presented clear and convincing evidence that termination of Sheila's parental rights is in the best interests of D.L. Sheila has had ample time to leave behind her life of drug abuse and maintain a stable source of income with which to support her children. D.L. and C.L. have been living together since 2001 in a home of foster parents who want to adopt them both. D.L.'s Guardian Ad Litem testified that both children need permanency and that adoption, not reunification with their mother, would accomplish that. The only differences between D.L. and C.L.—age and bonding with the mother—do not justify the termination of parental rights to C.L. and not D.L. The four-year difference in age between the siblings—four years of age versus eight years of age—is minor given both of the children's tender ages. The bonding of D.L. to his mother is also inconsequential as it is likely a result of the age difference between D.L. and C.L. and because D.L. is also bonded to the Haralsons. For the reasons that Sheila has not demonstrated that she can live a drug-free lifestyle, D.L. needs the permanency that adoption can provide, separating D.L. and C.L. would be extremely detrimental to both of the children, and the differences between D.L. and C.L. do not support different results, we conclude that the trial court's denial of the petition for the involuntary termination of Sheila's parental rights to D.L. is clearly erroneous. The MCOFC and Guardian Ad Litem have demonstrated prima facie error. Accordingly, we reverse the trial court's determination that Sheila's parental rights to D.L. should not be terminated, and we remand to the trial court with instructions to enter an order terminating Sheila's parental rights to D.L.

Affirmed in part, reversed and remanded in part.

RILEY, J., and CRONE, J., concur.