**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**DEIDRE L. MONROE**
Public Defender's Office
Gary, Indiana

ATTORNEYS FOR APPELLEE
DEPARTMENT OF CHILD SERVICES:

**EUGENE M. VELAZCO, JR.**
DCS Lake County Office
Gary, Indiana

**ROBERT J. HENKE**
DCS Central Administration
Indianapolis, Indiana

ATTORNEY FOR APPELLEE
LAKE COUNTY COURT APPOINTED
SPECIAL ADVOCATE:

**DONALD W. WRUCK**
Dyer, Indiana

FILED
Aug 29 2012, 9:41 am
CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF J.K., M.K., and C.K. (MINOR CHILDREN) and | ) ) ) ) | |
| S.P. (MOTHER), | ) ) | |
| Appellant-Respondent, | ) ) | |
| vs. | ) ) | No. 45A03-1201-JT-45 |
| INDIANA DEPARTMENT OF CHILD SERVICES, | ) ) ) | |
| Appellee-Petitioner, | ) ) | |
| and | ) | |

LAKE COUNTY COURT APPOINTED )
SPECIAL ADVOCATE, )
                               )
       Appellee. )

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Mary Beth Bonaventura, Judge
Cause Nos. 45D06-1104-JT-118, -119, and -120

**August 29, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

## Case Summary

S.P. ("Mother") appeals the trial court's involuntary termination of her parental rights to her children J.K., M.K., and C.K. Mother contends that the trial court's decision is clearly erroneous. Finding no error, we affirm.

## Facts and Procedural History

Mother had three children with B.K. ("Father"). J.K. was born in August 2006, M.K. in September 2007, and C.K. in November 2009. Mother tested positive for cocaine and opiates at the time of C.K.'s premature birth, and C.K. was treated for intrauterine drug exposure and severe withdrawal symptoms. The Department of Child Services ("DCS") removed the children from Mother's care and ultimately placed them with their paternal grandparents, with whom both Mother and Father lived at the time. The children were found to be children in need of services ("CHINS"), and both Mother and Father were ordered to participate in various services, including parenting classes and substance abuse evaluation

2

and treatment. Mother participated in and even completed some of the services but continued to test positive for illegal drugs. She was arrested for shoplifting in October 2010 and consequently violated her probation for a prior theft conviction. Father's parents kicked Mother out of their home, and she eventually moved into a friend's apartment.

In April 2011, DCS filed a petition to terminate Mother's and Father's parental rights. Father voluntarily relinquished his parental rights. The trial court held an evidentiary hearing and on December 20, 2011, issued an order terminating Mother's parental rights that reads in pertinent part as follows:

> The allegations of the petition are true:
>
> The child(ren) ha[ve] been removed from their parent(s) for at least six (6) months under a dispositional decree(s) of this Court dated January 20, 2010, retroactive to November 24, 2009 ….
>
> The child(ren) ha[ve] been removed from the parent and ha[ve] been under the supervision of [DCS] for at least fifteen (15) of the most recent twenty-two (22) months.
>
> There is a reasonable probability that the conditions resulting in the removal of the child[ren] from their parents' home will not be remedied in that: DCS became involved when [C.K.] was born testing positive for drugs at birth. Mother also tested positive for drugs. The child was born premature and was having severe drug withdrawals. Mother and Father had a history of marijuana, ecstasy, cocaine, and heroin abuse. Mother and [F]ather were participating in a meth[a]done treatment plan.
>
> [DCS] set up a case plan for reunification for the parents which included a drug and alcohol evaluation, random drug screens, individual counseling, parenting assessment, psychological evaluation and parenting classes. Father was to establish paternity. The parents were not consistent with the services and continued to struggle with their substance abuse issues. The parents were offered supervised visitations with the children and [M]other would sleep during the visitations. Mother always appeared to be under the influence of some drug. Mother was not consistent in attending the visitations. The

3

substance abuse evaluations recommended that the parents complete an intensive inpatient or outpatient substance abuse program. The parents did not have stable housing and were living with the grandparents. Initially, [M]other was asked to remove herself from the grandparent[s'] home due to [M]other continuing to test positive on her drug screens. After [M]other completed a hair follicle test in Spring 2010 and the results were negative, except for the meth[a]done, [M]other was allowed to move back into the grandparent[s'] home. Therapy and services now became home based for the parents who were residing with the grandparents and the children. The services became more stable. The parents were not progressing in their services. The parents continued to struggle with their substance abuse issues. The parents were then ordered to participate in the intensive substance abuse program. Mother was ordered into an inpatient program and [M]other did not want to participate.

Mother did not have employment. Mother did not have stable housing. Mother could not live independently and relied on the grandparents for support. Mother and Father both have a criminal record and currently [F]ather is incarcerated. Mother has a criminal history and has been incarcerated at various times throughout this case. [M]other eventually participated in the services after several months and several service agencies, but was reluctant in the participation. Mother would not consistently make herself available for the service providers. The parents have made no progress in their case plan.

In January 2011 [M]other indicated that she would enter into an inpatient substance abuse program in order to keep the permanency plan of reunification. Mother was given another chance to prove that she could properly parent these children. Mother failed to enter a program. Mother indicated that she did not need any more treatment besides the meth[a]done. Mother was arrested for shoplifting in January 2011. [M]other was kicked out of the grandparent[s'] home. [M]other would not make herself available for the drug screens. Mother only completed a handful of the attempted screens. [M]other tested positive for marijuana in January 2011 and tested positive for cocaine in March 2011. Mother had an active bench warrant in March 2011 and was incarcerated. [M]other was ordered into an inpatient rehabilitation program pursuant to her probation plan. Mother indicated to the case manager that she did complete an inpatient program, but could not provide any proof of same. Mother completed a hair follicle test in October 2011 which was positive for cocaine. Mother completed three hair follicle tests over the course of this case in March 2010, June 2010, and October 2011, all of which were positive. Mother has been unable to remain drug free. Services have been closed out for [M]other due to her noncompliance, lack of progress and

4

continued drug use. Mother is still unstable in her housing situation and has been living with various friends.

….

Neither parent is providing any emotional or financial support for the children. Father has voluntarily relinquished his parental rights. The children are in relative placement with the grandparents and are thriving. Mother is not in any position to properly parent these children. Mother has failed to remain drug free. Mother has failed to complete[] any case plan for reunification. Services were offered to [M]other for over two years with multiple substance abuse programs and [M]other could not remain drug free. The children were removed from parental care in November 2009 and have never been returned to parental care. The issues that were present when [DCS] became involved in November 2009 have not been remedied. Mother is still in complete denial of her substance abuse problem. Mother has no desire to enter into a substance abuse program. These children are stable and happy and have bonded in the grandparent[s'] home. These children deserve a drug free home.

There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child[ren] in that: Additionally, the children deserve a loving, caring, safe, stable and drug free home [sic].

It is in the best interest of the child[ren] and their health, welfare and future that the parent-child relationship between the child[ren] and their parents be forever fully and absolutely terminated.

[DCS] has a satisfactory plan for the care and treatment of the child[ren] which is Adoption by the grandparents ….

Appellant's App. at 5-7.[1]

Mother now appeals. Additional facts will be provided as necessary.

---

[1] Mother's counsel has included portions of the hearing transcript in the appellant's appendix in violation of Indiana Appellate Rule 50(F), which says, "Because the Transcript is transmitted to the Court on Appeal pursuant to Rule 12(B), parties should not reproduce any portion of the Transcript in the Appendix."

**Discussion and Decision**

"The involuntary termination of parental rights is an extreme measure that terminates all rights of the parent to his or her child and is designed to be used only as a last resort when all other reasonable efforts have failed." *M.H.C. v. Hill*, 750 N.E.2d 872, 875 (Ind. Ct. App. 2001).

> The Fourteenth Amendment to the United States Constitution provides parents with the rights to establish a home and raise their children. However, the law allows for termination of those rights when the parties are unable or unwilling to meet their responsibility as parents. This policy balances the constitutional rights of the parents to the care and custody of their children with the State's limited authority to interfere with these rights. Because the ultimate purpose of the law is to protect the child, the parent-child relationship must give way when it is no longer in the child's best interest to maintain the relationship.

*Id*. (citations omitted).[2]

Indiana Code Section 31-35-2-4(b) provides that a petition to terminate parental rights must meet the following relevant requirements:

(2) The petition must allege:

(A) that one (1) of the following is true:

(i) The child has been removed from the parent for at least six (6) months under a dispositional decree.

(ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

---

[2] At the end of the argument section of Mother's brief, counsel writes, "The Court must make a stance [sic] in ruling that the parents have fundamental rights that are protected by the U.S. Constitution. The continued destruction of the family structure should not be tolerated by this Court…. The Court must stop the direct assault on the rights of parents in the State of Indiana." Appellant's Br. at 11. We appreciate vigorous advocacy, but such rhetoric goes beyond the bounds of effective advocacy.

(iii) The child has been removed from the parent and has been under the supervision of a county office of family and children or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

DCS must prove "each and every element" by clear and convincing evidence. *In re G.Y.*, 904 N.E.2d 1257, 1261 (Ind. 2009); Ind. Code § 31-37-14-2. "Clear and convincing evidence need not show that the continued custody of the parent is wholly inadequate for the child's very survival. Instead, it is sufficient to show by clear and convincing evidence that the child's emotional and physical development is threatened by the parent's custody." *In re G.H.*, 906 N.E.2d 248, 251 (Ind. Ct. App. 2009) (citation omitted). If the trial court finds that the allegations in a petition are true, the court shall terminate the parent-child relationship. Ind. Code § 31-35-2-8(a).

We have long had a highly deferential standard of review in cases involving the termination of parental rights. *In re D.B.*, 942 N.E.2d 867, 871 (Ind. Ct. App. 2011). We

neither reweigh evidence nor assess witness credibility, and we consider only the evidence and reasonable inferences most favorable to the trial court's judgment. *Id*. We apply a two-tiered standard of review: we first determine whether the evidence supports the trial court's findings and then determine whether the findings support the judgment. *Id*. In deference to the trial court's unique position to assess the evidence, we will set aside its judgment terminating a parent-child relationship only if it is clearly erroneous. *Id*. "A finding of fact is clearly erroneous when there are no facts or inferences drawn therefrom to support it." *In re J.H.*, 911 N.E.2d 69, 73 (Ind. Ct. App. 2009), *trans. denied*. A judgment is clearly erroneous only if the legal conclusions drawn by the trial court are not supported by its findings of fact or the conclusions do not support the judgment. *Id*. "If the evidence and inferences support the trial court's decision, we must affirm." *In re C.G.*, 954 N.E.2d 910, 923 (Ind. 2011).

Initially, Mother contends that the trial court erred in concluding that there is a reasonable probability that the conditions that resulted in the children's removal will not be remedied and that continuation of the parent-child relationship poses a threat to the children's well-being. Because DCS is required to prove only one of the foregoing, we address only the first. Mother does not specifically challenge the validity of any of the findings supporting the trial court's conclusion, but instead suggests that the court failed to give sufficient weight to the fact that she "completed parenting classes, participated in individual and family therapy, submitted to numerous drug screens, and completed two substance abuse programs." Appellant's Br. at 9.

8

In determining whether there is a reasonable probability that the conditions that resulted in a child's removal will not be remedied,

> the trial court must judge a parent's fitness to care for her child at the time of the termination hearing, taking into consideration evidence of changed conditions. The trial court must also evaluate the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child. Pursuant to this rule, courts have properly considered evidence of a parent's criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and lack of adequate housing and employment. The trial court may also properly consider the services offered to the parent by [DCS] and the parent's response to those services as evidence of whether conditions will be remedied. Finally, [DCS] is not required to provide evidence ruling out all possibilities of change; rather, it need establish only that there is a reasonable probability the parent's behavior will not change.

*In re I.A.*, 903 N.E.2d 146, 154 (Ind. Ct. App. 2009) (citations, quotation marks, and emphases omitted).

Here, the children were removed from Mother's care because of her illegal drug use, which negatively affected the health of her newborn baby. Notwithstanding Mother's participation in (and even completion of) parenting classes and substance abuse programs, she tested positive for illegal drugs on several occasions, including as recently as two months before the termination hearing. The trial court was free to disregard Mother's self-serving claims of newfound sobriety and her explanation for the positive drug test. Mother was arrested for shoplifting within a year of the termination hearing, violated her probation for a prior theft conviction, and never obtained stable housing or employment. Under these circumstances, we cannot conclude that the trial court clearly erred in determining that there is a reasonable probability that Mother's behavior will not change. Mother's argument to the

9

contrary is essentially an invitation to reweigh evidence and judge witness credibility, which we may not do.

Mother also challenges the trial court's conclusion that termination of the parent-child relationship is in the children's best interests. She contends that the children's paternal grandfather testified that he would deny her visitation[3] and claims that he is punishing her "because she would not voluntarily relinquish her parental rights." Appellant's Br. at 11. She further claims that the children "will experience severe mental anguish, if they were told that they would not see their mother again. Certainly, mental abuse is not in the best interest of [the children], and their interests are most definitely not served by this ruling." *Id*. The termination of Mother's parental rights is the unfortunate result of her own wrongdoing, and the children's grandfather is well within his rights to deny her visitation. Mother has failed to establish how this constitutes "mental abuse," let alone that the trial court clearly erred in concluding that termination is in the children's best interests. Mother has raised no other claims of error, and therefore we affirm.

Affirmed.

RILEY, J., and BAILEY, J., concur.

---

[3] Mother has failed to support this contention with a citation to the transcript as required by Indiana Appellate Rule 46(A)(8)(a).