**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Aug 20 2013, 5:47 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**BRENT C. VIAN**
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**CHERRIE L.B. WELLS**
Indiana Department of Child Services
Fort Wayne, Indiana

**ROBERT J. HENKE**
DCS Central Administration
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

IN THE MATTER OF THE TERMINATION OF )
THE PARENT CHILD RELATIONSHIP OF: )
D.W., Minor Child, )
       )
       and, )
       )
D.C., Father, )
       )
       Appellant-Respondent, )
       )
       vs. )      No. 02A05-1208-JT-425
       )
THE INDIANA DEPARTMENT OF )
CHILD SERVICES, )
       )
       Appellee-Petitioner. )

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable William L. Briggs, Senior Judge
Cause No. 02D08-1108-JT-131

**August 20, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

## Case Summary

D.C. ("Father") appeals the termination of his parental rights to his son, D.W. We affirm.

## Issue

The sole issue is whether there is sufficient evidence to support the termination of Father's parental rights.

## Facts

D.W. was born in May 2010 and was immediately removed from the care of his mother, N.W. ("Mother"), and placed in foster care, because he had marijuana in his system. Mother already was the subject of a child in need of services ("CHINS") proceeding for another child, T.J. D.W. was found to be a CHINS on June 23, 2010. On November 4, 2010, Father appeared in court and admitted to being D.W.'s father. The dispositional order as to Father required him to, among other things, refrain from criminal activity, cooperate with Department of Child Services ("DCS") caseworkers, obtain a family functioning assessment and follow all recommendations that resulted, establish paternity of D.W., and attend and participate in visitation with D.W.

2

Father did not establish paternity of D.W. until October 31, 2011. DCS never considered placing D.W. with Father because he was living with his mother. Father's mother had a criminal history and, furthermore, had a prior history with DCS that included Father having been removed from her care and never returned to her. Father also tested positive for cocaine and marijuana use during the CHINS proceedings. Despite being referred to drug and alcohol abuse services, Father never began any participation in them. He also never completed the required family functioning assessment. Although Father was referred for visitation with D.W. in 2010 and 2011, he did not begin visitation with D.W. until January 2012, which was the first contact Father had with D.W. other than at the time of his birth. Father had a total of four or five visits with D.W. before they were suspended due to no-shows. Father has never lived independently, never had the ability to financially support D.W., and in fact was in the Allen County jail at the time of the termination hearing.[1]

During the CHINS proceedings, Father discussed with his aunt, Latonya Haynes, the possibility of D.W. living with her. Haynes did express interest in that plan and, in fact, she was a licensed foster parent. Haynes told Father during the CHINS proceedings that she was unable to take in D.W. because of other matters in her personal life, apparently related to two other foster children she had recently taken into her home. Sometime before the termination hearing, however, Haynes contacted DCS and expressed that she was then willing and able to take D.W. into her care, but the DCS

---

[1] There is no clear evidence in the record regarding whether Father was jailed awaiting trial on a charge or was serving a sentence following conviction.

caseworker said she would be in contact with her after the termination proceedings were completed.

On December 7, 2011, the DCS filed a petition to terminate Mother and Father's parental rights. The trial court conducted hearings on the petition on May 21, May 29, and June 28, 2012. Father testified that if D.W. was placed in his aunt's custody, he would consent to her adopting the child. On June 29, 2012, the trial court entered its order terminating Mother and Father's parental rights. Father now appeals; Mother does not.

## Analysis

"When reviewing the termination of parental rights, we do not reweigh the evidence or judge witness credibility." In re I.A., 934 N.E.2d 1127, 1132 (Ind. 2010). We consider only the evidence and reasonable inferences most favorable to the judgment. Id. "We must also give 'due regard' to the trial court's unique opportunity to judge the credibility of the witnesses." Id. (quoting Indiana Trial Rule 52(A)). Where a trial court enters findings of fact and conclusions thereon, as the trial court did here, we apply a two-tiered standard of review. Id. "First, we determine whether the evidence supports the findings, and second we determine whether the findings support the judgment." Id. We will set aside the trial court's judgment only if it is clearly erroneous, which occurs if the findings do not support the trial court's conclusions or the conclusions do not support the judgment. Id.

A petition to terminate a parent-child relationship must allege:

(A) that one (1) of the following is true:

> (i) The child has been removed from the parent for at least six (6) months under a dispositional decree.
>
> (ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.
>
> (iii) The child has been removed from the parent and has been under the supervision of a county office of family and children or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) that one (1) of the following is true:

> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>
> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>
> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). DCS has the burden of proving these allegations by clear and convincing evidence. I.A., 934 N.E.2d at 1133.

On appeal, Father's sole argument is that it was not in D.W.'s best interests to terminate his parental rights because the DCS did not consider placing him with Haynes. He makes no argument regarding whether the DCS had a sufficient plan for D.W. following termination, or whether there was a reasonable probability that the conditions leading to D.W.'s placement outside the home would not be remedied, or whether continuation of the parent-child relationship posed a threat to D.W.'s wellbeing, or whether a sufficient amount of time had passed since the beginning of the CHINS proceeding.

Father argues that the DCS failed to comply with Indiana Code Section 31-34-4-2(a)(1), which states in part:

> If a child alleged to be a child in need of services is taken into custody under an order of the court . . . and the court orders out-of-home placement, the department is responsible for that placement and care and must consider placing the child with a . . . suitable and willing blood or adoptive relative caretaker, including . . . an aunt . . . .

We observe that this statute governs placement of a child during a CHINS proceeding and is not directly relevant to a termination action. And, during the CHINS proceedings, Haynes said she was then unable to take D.W. into her care. It does not appear that Haynes informed the DCS of her changed willingness and ability to take in D.W. until after the termination proceedings had begun.

6

We also note that even if D.W. had been placed with Haynes, it would not have precluded the termination of Father's parental rights. First, Indiana Code Section 31-35-2-4.5(d)(1) provides that the DCS "may" seek dismissal of a petition to terminate parental rights if there is a "compelling reason" for concluding that termination would not be in a child's best interests; a "compelling reason may include the fact that the child is being cared for by a custodian who is a . . . responsible adult who is the child's . . . aunt" or other closely related individual. Under this statute, as the word "may" twice indicates, whether to seek dismissal of a termination petition under this statute lies within the DCS's discretion. In re Involuntary Termination of Parent-Child Relationship of Kay.L., 867 N.E.2d 236, 241 (Ind. Ct. App. 2007). In other words, even if D.W. had been placed with Haynes, the DCS would not have been under any obligation to forgo seeking termination of Father's parental rights.

Finally, we addressed a somewhat similar argument in M.H.C. v. Hill, 750 N.E.2d 872 (Ind. Ct. App. 2001). In that case, unlike here, the father's child was in fact placed with an aunt, and the trial court proceeded to terminate the father's parental rights. The father argued that it was not in his child's best interests to have his parental rights terminated because "everything would have been fine" if the trial court had instead named the aunt as his child's permanent guardian. We rejected this claim, holding the evidence and findings regarding the father's habitual patterns of inappropriate conduct were sufficient to establish that termination was in the child's best interests. Hill, 750

7

N.E.2d at 878-79. We reviewed the question of father's parental suitability and the child's well-being independent of whether the child was in a relative's care.

Here, there is substantial evidence that Father put almost no effort in attempting to make himself a suitable parent to D.W. He used illegal drugs during the CHINS proceedings and refused to participate in any drug counseling services, despite repeated referrals for such services from the DCS. This is very troubling, given that drug abuse was what led to D.W.'s initial removal from Mother's custody. Father never completed an initial family functioning assessment, again despite several referrals to do so, and thus received no counseling or services that might have resulted from such an assessment. Throughout the CHINS proceedings he was unable to support himself independently and was living with his mother, whose home was unsuitable for D.W. given her own criminal history and DCS involvement. At the time of the termination hearing Father was in an even worse situation, incarcerated in the local jail. Father did not visit with D.W. from the time of his birth until he was more than eighteen months of age, and those visits ended after just a few occasions because of no-shows. In sum, even if Haynes would make a perfectly acceptable foster or adoptive parent to D.W., that does not affect the evaluation of Father's own suitability as a parent. The evidence instead establishes his unsuitability and that termination of his parental rights is in D.W.'s best interests.

## Conclusion

There is sufficient evidence to support the termination of Father's parental rights. We affirm.

8

Affirmed.

CRONE, J., and PYLE, J., concur.