In the matter of the PATERNITY
OF P.R. and A.R. (Minors).

H.B., Appellant–Petitioner,

v.

J.R., Appellee–Respondent.

No. 36A01–1005–JP–255.

Court of Appeals of Indiana.

Dec. 29, 2010.

Stephen S. Pierson, Seymour, IN, Attorney for Appellant.

Michael L. Rogers, North Vernon, IN, Attorney for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Pursuant to a 2010 amendment to Indiana Evidence Rule 201(b), a court may now take judicial notice of "records of a court of this state." Because H.B. ("Mother") did not request an opportunity to be heard pursuant to Rule 201(e) after the trial court in this case took judicial notice, we conclude that the court properly took judicial notice of a protective order that Mother obtained against an ex-boyfriend and then considered it in the custody modification proceedings with J.R. ("Father"). We therefore affirm the trial court.

### Facts and Procedural History[1]

Mother and Father, who dated for approximately four years but never married, have two children, P.R., born July 14, 2004, and A.R., born September 9, 2005.

In 2007 paternity of the children was established in Father, Mother was awarded sole custody of the children, and Father was ordered to pay child support in the amount of $150.00 per week.

In October 2009 Father filed a petition to modify custody and support. A hearing was then held in April 2010. At the time of the hearing, Mother, age twenty-seven and twice divorced, lived with Kevin Alcorn, age twenty-two. With them lived P.R., A.R., and ten-year-old P.M., Mother's child from one of her previous marriages. Mother, who had been dating Alcorn since 2008, was aware that Alcorn had a 2005 felony conviction for battery on a minor under the age of fourteen, had served nine months in prison for that conviction, and was the subject of a CPS investigation for child abuse (supposedly the same victim as the battery conviction). Alcorn also had a conviction for furnishing alcohol to a minor. Mother maintained a MySpace page. On this page, Mother questioned the credibility of P.R. and A.R. regarding allegations that Alcorn may have abused them. These allegations were never substantiated.

Mother testified at the hearing that for a couple of months in the fall of 2009, she and Alcorn separated, during which time she moved out and dated Chris Davis. Davis had a felony battery conviction (not relating to her). On one occasion, Davis was at Mother's house and punched a hole in the wall. Although the children were home at the time, they were sleeping. As

---

1. We note that the Appellant's Appendix does not contain copies of any of the parties' motions filed in the trial court or the trial court's orders (except for the order being appealed), such as the trial court's initial order establishing custody and child support or Father's petition to modify custody. As a result, because neither the trial court's order nor the parties make clear, we do not know whether physical and/or legal custody is affected by the order in this case. Indiana Appellate Rule 50(A)(2)(f) provides that the Appellant's Appendix shall contain copies of "pleadings and other documents from the Clerk's Record in chronological order that are necessary for resolution of the issues raised on appeal." Without these documents, we are forced to take the background information in this case from the parties themselves, without substantiation from the underlying documents.

a result of this incident, Mother obtained a protective order against Davis "in case something crazy like that would happen" again. Tr. p. 55. Although the protective order was not admitted into evidence at the hearing, Mother testified that she obtained the protective order "[h]ere," in "this court." *Id.* at 71.

At the time of the hearing, Mother was unemployed and had been since February 2009. She admitted that she had been charged with operating while intoxicated in May 2008 but explained that it had been reduced to reckless driving and public intoxication. According to Mother, she has drunk less since that incident.

In contrast to Mother, at the time of the hearing Father was recently married and employed. Father testified that he filed the petition to modify custody because he was concerned about P.R.'s and A.R.'s care. He explained that when he gets the children for parenting time, they have "dirty hands, dirty clothes, [and] torn up shoes." *Id.* at 33. He also said that they have "[s]cratches, bruises, rashes all over the body[,] ... runny noses, coughing, sneezing, vomiting, [and] diarrhea." *Id.* Father submitted photographs of the children to support his testimony. Father expressed concern over HPV warts on P.R.'s hands that Mother was not consistently treating, although Mother had taken P.R. to a doctor and received a cream to apply. Father was also concerned about a rash over a large portion of P.R.'s body that Mother apparently did not treat but that he would treat while P.R. was in his care. Father testified that A.R., who wears glasses, often went without them for a week or more at a time because A.R. would break them while in Mother's care, but Mother would not get them fixed for awhile. Finally, Father described a time when P.R., shoeless and helmetless in Mother's care, rode a dirt bike with Al-

corn's brother. When P.R. then got off the dirt bike, she stepped onto the hot muffler, burning the bottom of her foot and requiring a trip to the emergency room.

After the custody modification hearing, the trial court issued the following order:
1. The legal standard for Modification of Custody [is] whether a substantial and continuing change in circumstances has occurred which makes the prior order [unreasonable]. The question before the Court is whether a substantial and continuing change in the circumstances has occurred. The evidence in this case shows that Petitioner [H.B.] has resided with Kevin Alcorn two periods, Mr. Alcorn who has been convicted and spent time incarcerated for a Battery on a Child. Further [H.B.] mocked her own children on [MySpace] ages 3 and 5 for statements they made about Kevin Alcorn. In addition, when [H.B.] and Kevin Alcorn were broken up from August 2009 to October 2009[,] [H.B.] dated another convicted felon Chris Davis.
2. In addition [H.B.] obtained a Protective Order against Chris Davis in this Court on November 16, 2009. In the application for Protective Order [H.B.] alleges:
   A. Chris Davis smashed the phone against her face on October 19, 2009.
   B. Threatened [H.B.] and punched a hole in the wall on October 30, 2009.
   C. Followed [H.B.'s] boyfriend to Wal–Mart and threatened to stab him.
3. The evidence further raised questions about the cleanliness of the parties['] children while in [H.B.'s] care. The evidence also raises question[s] about [H.B.'s] ability to care for rashes and the medical issues. There is no question in the Court's mind that [H.B.] loves her children. However, the evi-

dence has raised substantial and legitimate questions about her judgment in exposing her children to an unstable environment where domestic violence has occurred and where ongoing risks of domestic violence exist.

4. The Respondent, [J.R.] appears to the Court as a loving father solely concerned about the welfare of his children. However, [J.R.] failed to pay Child Support in the amount of $3150. [J.R.] criticizes [H.B.] for her conduct in raising the children. However, he has failed to follow the Order of the Court, and has failed to properly support his children. The Court is troubled by [J.R.'s] failure to pay child support. However, [J.R.'s] failure to pay Child Support does not change the fact, there are substantial issues related to [H.B.'s] ability to care for her children. The Court finds a substantial and continually [sic] change in circumstances has occurred and that custody of the parties' minor children shall be transferred to [J.R.]. [H.B.] shall have parenting time pursuant [to] the Indiana Parenting Time Guidelines starting Friday May 7, 2010.

5. [H.B.] shall not be ordered to pay child support at this time. [J.R.] shall receive a $60.00 per week credit against his support arrearage for the next 63 weeks.

Appellant's App. p. 3–4.

## Discussion and Decision

Mother raises two issues on appeal, which we reorder and restate as follows. First, she contends that the trial court erred in considering the substance of the protective order she obtained against Davis because that protective order was not admitted into evidence at the hearing. Second, she contends that the trial court erred in modifying custody of P.R. and A.R. to Father.

## I. Judicial Notice

Mother contends that the trial court erred in considering the substance of the protective order she obtained against Davis because the protective order file was not admitted into evidence at the hearing. Mother concedes that she testified at the hearing that she obtained a protective order against Davis for punching a hole in her wall, but she points out that neither she nor any other witness testified to the other information contained in the protective order file, such as that Davis smashed a phone in her face and threatened to kill her boyfriend. Mother thus argues in her brief:

No party requested the court to take judicial notice of any Protective Order file, nor did the Court advise the parties of its intention to seek out such file for purposes of deciding this case. The first knowledge counsel had of this matter was when the Order was distributed to counsel on April 26, 2010, long after the evidence was closed. Mother was given no opportunity to object to the extrajudicial inquiry.

Appellant's Br. p. 9.

Indiana Evidence Rule 201 governs judicial notice. Evidence Rule 201 was amended in 2009 and went into effect on January 1, 2010. Pursuant to the amendment, a court may now take judicial notice of "records of a court of this state." Ind. Evidence Rule 201(b)(5). Before this amendment, a court could not take judicial notice of its own records in another case previously before it, even on a related subject with related parties. *See, e.g., Whatley v. State,* 847 N.E.2d 1007, 1009 (Ind.Ct.App.2006).

In addition, "[a] court may take judicial notice, whether requested or not," Evid. R. 201(c), and judicial notice may be taken at any stage of the proceeding, *id.* at (f). And a party does not have to be notified

*before* a court takes judicial notice. Rule 201(e) instructs:

> A party is entitled, upon timely request, to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. *In the absence of prior notification, the request may be made after judicial notice has been taken.*

(Emphasis added).

■ Applying Evidence Rule 201 to the case at hand, we conclude that the trial court properly took judicial notice of the protective order file. Because Rule 201 provides that a trial court can take judicial notice at any stage of the proceeding, it does not matter that the court took judicial notice after the hearing was concluded. Although Mother was not afforded an opportunity to be heard before the court took judicial notice, Rule 201(e) provides that Mother could have made a timely request after judicial notice was taken. She, however, did not do this. The fact that Mother is now appealing the trial court's action does not constitute a timely request for an opportunity to be heard pursuant to Rule 201(e). Instead, she had to make that request to the trial court.

Although we conclude that the trial court properly took judicial notice of the protective order file pursuant to Evidence Rule 201, we point out that the better course of action would have been for the court to have given the parties notice and an opportunity to be heard before taking judicial notice and issuing its order. Undoubtedly, our information technology explosion has allowed our courts, as never before, to access reliable information that may aid in the just disposition of cases. Our Supreme Court, recognizing this, has encouraged courts to communicate with one another by establishing family courts [2] and creating JTAC (Judicial Technology and Automation Committee),[3] while liberalizing the judicial notice rule. But the danger of having a broad spectrum of information at the disposal of courts is that mistakes in input, inscription, and transmission can occur. To alleviate the danger of such errors, litigants must be given the opportunity to explain or respond to the judicially-noticed information. We understand that the Indiana Rules of Evidence allows litigants to respond to this information at any stage of the proceeding, but we believe that, where practicable, the best practice is for courts to notify the parties before taking notice of and issuing a ruling which utilizes this information.

## II. Custody Modification

■ Mother next contends that the trial court erred in modifying custody of P.R. and A.R. to Father. We review custody modifications for abuse of discretion, with a preference for granting latitude and deference to our trial judges in family law matters. *Julie C. v. Andrew C.,* 924

2. "The Family Court Project was initiated in 1999 as a cooperative effort between the General Assembly and the Indiana Supreme Court. The purpose of the Project is to develop 'common sense' models to better serve children and families in our courts. The initial emphasis of the Family Court Project was to develop models to coordinate families who have multiple cases pending before multiple judges." Family Court Project, *About: The Family Court Vision,* http://www.in.gov/judiciary/family-court/about.html (last visited Dec. 10, 2010). Today, there are twenty-three family court counties. *Id.* All projects include some type of judicial coordination of multiple-case families. *Id.*

3. "JTAC's principal and most ambitious project is to equip all Indiana courts with a 21st century case management system (CMS) [Odyssey] and to connect the courts' systems with each other and with those who need and use court information." JTAC, *Initiatives and Programs,* http://www.in.gov/judiciary/jtac/programs.html (last visited Dec. 10, 2010).

N.E.2d 1249, 1256 (Ind.Ct.App.2010). In the initial custody determination, both parents are presumed equally entitled to custody, but a petitioner seeking subsequent modification bears the burden of demonstrating that the existing custody should be altered. *Id.* When reviewing a trial court's decision modifying custody, we may not reweigh the evidence or judge the credibility of the witnesses. *Id.* Instead, we consider only the evidence most favorable to the judgment and any reasonable inferences therefrom. *Id.*

Indiana Code section 31–17–2–21 provides that a trial court may not modify a child custody order unless (1) the modification is in the best interests of the child and (2) there is a substantial change in one or more of the factors that the court may consider under Indiana Code section 31–17–2–8. Section 31–17–2–8 provides that the trial court is to consider all relevant factors, including:

(1) The age and sex of the child.

(2) The wishes of the child's parent or parents.

(3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

(4) The interaction and interrelationship of the child with:

(A) the child's parent or parents;

(B) the child's sibling; and

(C) any other person who may significantly affect the child's best interests.

(5) The child's adjustment to the child's:

(A) home;

(B) school; and

(C) community.

(6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic or family violence by either parent.

(8) Evidence that the child has been cared for by a de facto custodian. . . .

■ In interpreting Section 31–17–2–21, this Court has held that "all that is required to support modification of custody . . . is a finding that a change would be in the child's best interests, a consideration of the factors listed in I.C. § 31–17–2–8, and a finding that there has been a substantial change in one of those factors." *Nienaber v. Nienaber,* 787 N.E.2d 450, 456 (Ind.Ct.App.2003). Absent a request by a party, the trial court does not have to enter special findings that specify which factor(s) has substantially changed and explain why a change in custody is in the best interests of the child. *Kanach v. Rogers,* 742 N.E.2d 987, 989 (Ind.Ct.App.2001).

■ Although not required to, the trial court entered findings without a request to do so by the parties. These findings use an outdated standard which required the prior custody order to be unreasonable. *See Wallin v. Wallin,* 668 N.E.2d 259, 261–62 (Ind.Ct.App.1996) (statute no longer requires a finding that the current custody arrangement is unreasonable before allowing a modification); *see also Julie C.,* 924 N.E.2d at 1258 (noting that the legislature amended the statute in 1994 to remove requirement of unreasonableness). The findings also do not explicitly determine that the change of custody was in the best interests of the children. Nevertheless, because of the extensive findings, we are able to discern that the trial court determined that it was in the best interests of the children to live with Father. The trial court concluded that Mother had substantial issues related to her ability to care for her children, specifically, the trial court was concerned about Mother's ability to take care of the cleanliness and medical needs of the children as well as the children's exposure to domestic violence while in the Mother's care. Further, the

court found that these concerns represented a substantial and continuing change of circumstance such as to make the prior custody order unreasonable. While "unreasonableness of the prior order" is the incorrect standard for a modification of custody, it required Father to prove more than he was required to under the current law. That is so because, it necessarily follows that if there is a change in circumstances regarding the physical health of the children and evidence of domestic violence that is so substantial and continuing as to make the prior order unreasonable, then there is a substantial change in one or more of the relevant factors the trial court must consider under Section 31–17–2–8(6) and (7). We therefore affirm the trial court.

Affirmed.

MAY, J., and ROBB, J., concur.