# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 28 2016, 8:38 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

Daniel J. Vanderpool
Vanderpool Law Firm
Warsaw, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General

Robert J. Henke
David E. Corey
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Involuntary Termination of the Parent-Child Relationship of A.B. (Minor Child):<br><br>G.B. (Mother) and C.B. (Father)<br><br>*Appellants-Respondents,*<br><br>v.<br><br>Indiana Department of Child Services,<br><br>*Appellee-Petitioner* | March 28, 2016<br><br>Court of Appeals Case No. 85A02-1506-JT-794<br><br>Appeal from the Wabash Circuit Court<br><br>The Honorable Robert R. McCallen, III, Judge<br><br>Trial Court Cause No. 85C01-1410-JT-13 |

**Vaidik, Chief Judge.**

# Case Summary

[1] G.B. ("Mother") and C.B. ("Father") appeal the termination of their parent-child relationship with A.B. In addition to arguing that the evidence is insufficient to prove there is a reasonable probability that the circumstances leading to A.B.'s removal will not be remedied and that termination is in A.B.'s best interests, Mother and Father also contend that the trial court's findings are not supported by clear and convincing evidence because the court relied upon judicially noticed records of other cases, and those records were not entered into evidence. Indiana Rule of Evidence 201 permits courts to take judicial notice of records of a court of this state. There is no requirement in Rule 201 that such records be entered into the record of the present case. However, we have previously addressed the need to include judicially noticed records from other cases in the record submitted for appeal where those records are necessary for appellate review. In this case, the Indiana Department of Child Services ("DCS") included relevant portions of the "other" records in its appendix. That is sufficient to permit appellate review. Concluding that DCS has proven the statutory requirements by clear and convincing evidence and that the trial court's judgment terminating parental rights to A.B. is not clearly erroneous, we affirm.

# Facts and Procedural History

[2] A.B. was born November 1, 2012, to Mother and Father. In January 2013, Father overdosed on heroin and Mother drove him to the hospital. At that

time, both Father and Mother admitted using illegal drugs, and DCS removed A.B., then two months old, from them. A.B. was placed in foster care for nineteen days before ultimately being placed with Father's aunt and uncle.

[3] DCS filed a petition alleging A.B. was a child in need of services ("CHINS"). Mother agreed and the court adjudicated A.B. a CHINS on February 12, 2013. The court entered default judgment against Father the next day because he failed to appear for any of the hearings. According to the terms of the dispositional order entered in March 2013, Mother and Father were required to, among other things, participate in substance-abuse treatment, submit to drug screening, and participate in home-based services. Father was also ordered to participate in the Father Engagement Program.

[4] From March 2013 until March 2015, neither Mother nor Father complied with the dispositional order, with one exception: Mother attended the majority of her supervised visitations. Otherwise, Mother estimated that her longest period of sobriety lasted just three weeks. In October 2013, Mother requested participation in Family Drug Treatment Court, and a modified dispositional order was entered to transfer her case. The Family Drug Treatment Court terminated Mother's participation after only eight months because she violated the terms of her placement by testing positive for controlled substances at least fifteen times, including multiple positive tests for methamphetamine and at least one positive test for heroin, and failed to appear in court on multiple occasions. Mother also estimated that she failed to report for approximately twenty drug

screens. Mother's addictions therapist testified that Mother began treatment in late July 2014, continued for approximately two weeks, and then quit.

[5] Father was similarly noncompliant with the dispositional order. He did not make his first appearance in the underlying CHINS case until the July 19, 2013 periodic-review hearing—seven months after the initial hearing. The court noted in its order from the July 2013 hearing that Father had not visited A.B. Father was on probation for a felony conviction until August 2013, when his probation was revoked for failing drug screening and failing to report to his probation officer. Father met with his social worker twice for the Father Engagement Program in March 2014. He missed the third appointment, and the social worker was unable to reach him after that. Father's file was closed in April 2014 for lack of participation. He continued failing drug screens, and his probation was revoked again in June 2014. He has been incarcerated since.

[6] Finally, neither parent participated in home-based services to any meaningful extent in the two years after A.B. was adjudicated a CHINS. The family-services provider began working with Mother starting in January 2013 and Father starting in October 2013. Services were stopped in April 2014 because of inconsistent attendance.

[7] DCS filed a petition to terminate Mother's and Father's parental rights in October 2014. The fact-finding hearing was originally scheduled for December, but it was continued multiple times. While the fact-finding hearing was pending, Mother discovered that she was pregnant. She stopped using illegal

drugs—her last positive screen for illegal drugs was January 22, 2015—and began participating in the ordered services in March 2015. Father was convicted of one Class D felony in April and another Class D felony in May 2015, resulting in his continued incarceration. Although unable to participate in services, Father has remained drug-free while incarcerated.

[8] The fact-finding hearing occurred in May 2015. At the outset of the hearing, the court announced that it was taking judicial notice of several related "cases," including the original CHINS case, the Family Drug Treatment Court case, and criminal cases against Father. Tr. p. 5-6. No objections were raised, and there was no request for a hearing on the matter.

[9] The Court Appointed Special Advocate (CASA) recommended termination of parental rights. She based her recommendation on a full review of the file, six meetings with A.B. in her current placement, the CASA's educational background and experience, and the reports of other service providers. She did not meet with either Mother or Father after being assigned this case—the original CASA died before the petition to terminate parental rights was filed. She testified that she did not meet with Father because he was in jail from the time she was appointed until the hearing, and she attempted to contact Mother four times, but was unable to reach her. The Family Case Manager (FCM) also testified that it was in A.B.'s best interests to terminate the parent-child relationship.

[10]     In June 2015 the trial court entered an order with findings terminating Mother's and Father's parental rights.  Among the findings:

> [Father] never really engaged for any length of time in services. [He] was in and out of jail and has been for the better part of [A.B.]'s life.  When he was not incarcerated, he participated minimally in services. [Mother's] participation in services when she did so was limited, at least until very recently.

> \* \* \* \* \*

> From the time of [A.B.'s] removal until early January, 2015, neither [Mother] or [Father] had participated in services in any meaningful way. In January 2015, some four months after the petition to terminate parental rights was filed, [Mother] began engaging in random drug screens. By then, [Mother] was aware she was pregnant. . . . On or about March 9, 2015, [Mother] began substance abuse counseling, individual counseling, moral recognition therapy and was passing all of her drug screens. However, though her participation has been more consistent since March 9, 2015, this is not [Mother]'s first time at engaging in services and all prior efforts fell far short.

> \* \* \* \* \*

> [Father's aunt] testified and the Court believes that she fully hoped to be a temporary caregiver for [A.B.] while [Mother] and [Father] got their act together.  However, she is aware of [Mother's] actions over the last two years or so and recognizes the significant likelihood that [Mother's] current engagement is temporary and she will not ever be able to parent [A.B.]. [Father's aunt] wants what is best for [A.B.] despite the awkward position that puts her in.

> \* \* \* \* \*

> The DCS made significant efforts to facilitate reunification. Services were offered, time and again. Despite those efforts

neither parent benefitted to any appreciable degree, [Mother's] recent engagement in services notwithstanding. Her efforts were too little, too late. Reunification was the goal, and it was pursued, to no avail.

Appellants' App. 14-19.

[11] Mother and Father appeal the termination of their parental rights.

# Discussion and Decision

[12] The Fourteenth Amendment to the United States Constitution protects the right of parents to establish a home and raise their children. *In re K.T.K.*, 989 N.E.2d 1225, 1230 (Ind. 2013). However, a parent's rights may be terminated if the parent is unable or unwilling to meet his or her parental responsibilities by failing to provide for the child's immediate and long-term needs. *Id.* The purpose of terminating parental rights is not to punish parents, but to protect their children. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*.

[13] When reviewing the termination of parental rights, we do not reweigh the evidence or judge witness credibility. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). Rather, we consider only the evidence and the reasonable inferences that are most favorable to the judgment of the trial court. *Id.* When the trial court has entered findings and conclusions, we apply a two-tiered standard of review. *K.E. v. Ind. Dep't of Child Servs.*, 39 N.E.3d 641, 646 (Ind. 2015). First, we determine whether the

evidence supports the findings, and second, whether the findings support the judgment. *Id.* The judgment will be set aside only if it is clearly erroneous. *Id.* A judgment is clearly erroneous if the findings do not support the trial court's conclusions or the conclusions do not support the judgment. *In re R.J.*, 829 N.E.2d 1032, 1035 (Ind. Ct. App. 2005).

[14] A petition to terminate parental rights must allege, among other things:

> (B) that one (1) of the following is true:

> > (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

> > (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

> > (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

> (C) that termination is in the best interests of the child[.]

Ind. Code § 31-35-2-4(b)(2). DCS must prove the alleged circumstances by clear and convincing evidence. *K.T.K.,* 989 N.E.2d at 1231.

[15] Mother and Father raise five arguments, which we consolidate and restate as: (1) the record does not support the trial court's findings because judicially noticed records from other cases that support the findings were not entered into evidence; (2) there is insufficient evidence to support the trial court's

conclusions that the conditions that resulted in A.B.'s removal would not be remedied and that continuation of the parent-child relationship poses a threat to A.B.'s well-being; and (3) it is not in the best interests of A.B. to terminate the parent-child relationship.

# I. Judicial Notice

At the outset of the termination hearing, the trial court announced it was taking judicial notice of several "cases" and then listed cause numbers that included the related Family Drug Treatment Court cause number, the underlying CHINS proceeding, and five of Father's criminal cases. Tr. p. 5. DCS also requested judicial notice of another criminal case related to Father in a different county, submitting "paperwork from that case[,]" and the court took judicial notice of it as well. *Id.* at 5-6. However, no records from the judicially noticed cases were entered into the record of this case. Therefore, Mother and Father argue that the record here does not support the trial court's findings to the extent that those findings are based on judicial notice of records from the other cases.[1]

---

[1] Mother and Father question "whether [Indiana Rule of Evidence 201] allows the Court to note only that the records *exist*; or, to note the *contents* of those records…" Appellants' Br. p. 14. Because Mother and Father do not state an objection to a specific document or fact that the trial court noticed, we are unable to fully address this question. However, we have previously held that a trial court may take judicial notice of certain contents within the records of related proceedings. *See In re D.K.*, 968 N.E.2d 792, 796 (Ind. Ct. App. 2012) (stating that judicial notice of documents filed in a CHINS action was proper in the subsequent termination of parental rights case); *see also In re Paternity of P.R.*, 940 N.E.2d 346, 350 (Ind. Ct. App. 2010) (stating that it was not error for a trial court to take judicial notice of the substance of a protective order even though the protective order file was not entered into evidence).

[17] Mother and Father waived this argument. Issues not raised at the trial court are waived on appeal. *In re Involuntary Termination of Parent-Child Relationship of B.R.*, 875 N.E.2d 369, 373 (Ind. Ct. App. 2007), *trans. denied*. Where a party objects to a court taking judicial notice, Indiana Rule of Evidence 201 specifically provides an opportunity for a hearing—even after the notice has been taken. Ind. Evidence Rule 201(e) ("On timely request, a party is entitled to be heard on the propriety of taking judicial notice and the nature of the fact to be noticed. If the court takes judicial notice before notifying a party, the party, on request, is still entitled to be heard."); *see also In re Paternity of P.R.*, 940 N.E.2d 346, 350 (Ind. Ct. App. 2010). However, the timely request must be made to the trial court; "appealing the trial court's action does not constitute a timely request for an opportunity to be heard pursuant to Rule 201(e)." *In re Paternity of P.R.*, 940 N.E.2d at 350.

[18] Neither Mother nor Father objected to the trial court taking judicial notice of the "cases" or requested that the trial court incorporate the material in the record. In fact, later in the proceeding, Mother's attorney expressly acknowledged that the trial court had taken judicial notice of one of Father's criminal cases and stipulated that "the information contained therein is accurate." Tr. p. 47. While it is not clear what the trial court meant when it said it was taking judicial notice of "cases," and it is possible that Mother and Father did not realize the scope of the judicial notice being taken at the time, that scope was certainly clear when the final order was issued. Rule 201 permitted them to request a hearing at that time to dispute what the trial court

noticed or to request that the trial court include certain documents in the record of this case. No such request was made to the trial court. By failing to raise the question with the trial court, Mother and Father have waived their argument.

[19] Waiver notwithstanding, Mother's and Father's argument that the trial court's findings are unsupported because the record is incomplete still fails. They contend that *In re D.K.* "essentially requires" that "where a court takes judicial notice, some effort must be made to include those records in the record of the current proceeding." Appellants' Br. p. 15. The issue in *D.K.* was that neither party nor the trial court included records from the judicially noticed underlying CHINS case and the Appellee's brief relied on facts that were, therefore, missing from the record on appeal. This Court concluded that "if a party on appeal wishes to rely on parts of the 'other' record or records in making an argument before this court, it should include those parts in an appendix submitted to this court under Indiana Appellate Rule 50." *In re D.K.*, 968 N.E.2d at 797. That is precisely what DCS did in this case; DCS filed an Appellee's Appendix that contained the relevant portions from the judicially noticed cases. That is sufficient to allow appellate review and meets the standard expressed in *D.K.*

## II. Reasonable Probability That the Conditions Resulting in Removal Will Not Be Remedied

[20] Mother and Father contend that there was insufficient evidence to support the trial court's conclusions that they were unlikely to remedy the conditions that resulted in the removal of A.B., and that continuation of the parent-child

relationship poses a threat to A.B.'s well-being. Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive. Therefore, DCS is required to establish by clear and convincing evidence only one of the three requirements of subsection (B). In this case, we conclude that there is sufficient evidence to support the trial court's finding that there is a reasonable probability that the conditions that resulted in A.B.'s removal will not be remedied. Therefore, we need not address the finding that continuation of the parent-child relationship poses a threat to A.B.'s well-being.

[21] In determining whether the conditions that resulted in a child's removal or placement outside the home will not be remedied, we engage in a two-step analysis. *In re E.M.*, 4 N.E.3d 636, 642-643 (Ind. 2014). We first identify the conditions that led to removal or placement outside the home and then determine whether there is a reasonable probability that those conditions will not be remedied. *Id.* The second step requires trial courts to judge a parent's fitness at the time of the termination proceeding, taking into consideration evidence of changed conditions, and balancing any recent improvements against habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation. *Id.* In so doing, trial courts have discretion to weigh a parent's prior history more heavily than efforts made only shortly before termination, and courts may find that a parent's past behavior is the best predictor of his or her future behavior. *Id.* Finally, a parent's testimony about future plans is not evidence upon which a trial court can base its

termination decision. *In re B.D.J.*, 728 N.E.2d 195, 202 n.1 (Ind. Ct. App. 2000).

[22] Here, A.B. was removed from Mother and Father because of their drug use. The dispositional order required both parents to submit to drug screening, participate in substance-abuse treatment, and participate in home-based services. But from March 2013 until March 2015, neither Mother nor Father complied with that order. Mother testified that her longest period of sobriety was three weeks during the two years from A.B.'s removal in January 2013 until she discovered that she was two-months pregnant in January 2015. According to the order terminating Mother's participation in Family Drug Treatment Court, she tested positive for illegal substances, including methamphetamine and heroin, fifteen times and failed to report for an additional twenty drug screens. Father's probation was revoked twice for illegal drug use and he has spent the majority of the last two years incarcerated. He has not participated in either substance-abuse treatment or the Father Engagement Program to any meaningful extent.

[23] Both parents point to their recent sobriety and intention to engage in services going forward as evidence that the condition leading to A.B.'s removal will be remedied. In addition, Mother raises the fact that she substantially complied with supervised visitation at all times, and with her other services during her brief periods of sobriety before January 2015 as well as after March 2015. Father argues that he has been sober during the last year, while incarcerated,

and that services were unavailable to him during his incarceration, but he intends to engage with them when he is released.[2]

[24] These arguments invite us to reweigh the evidence—to put more emphasis on the recent improvement than the prior two years of non-compliance and substance abuse. We will not reweigh evidence on appeal. *Bester*, 839 N.E.2d at 147. Mother's and Father's two-year history of non-compliance with the dispositional order and continued substance abuse is supported by the record. And the findings of non-compliance and continued substance abuse support the trial court's conclusion that there is a reasonable probability that the conditions that resulted in A.B.'s removal will not be remedied.

## III. Best Interests of the Child

[25] In determining what is in a child's best interests, the trial court must look to the totality of the evidence. *In re A.D.S.*, 987 N.E.2d 1150, 1158 (Ind. Ct. App. 2013), *trans. denied.* In so doing, the trial court must subordinate the interests of

---

[2] Father asserts that he is in the same position as the father in *K.E. v. Indiana Department of Child Services*, 39 N.E.3d 641 (Ind. 2015). We find the facts of this case distinguishable from the facts in *K.E.* The father in *K.E.* saw his children every two weeks and called them daily to talk and to tell them goodnight. *Id.* at 649. Father in this case did not even see A.B. for the first seven months after her removal—and then his probation was revoked due to his continued drug use. In *K.E.*, the father voluntarily completed twelve programs to improve his life and parenting skills while he was incarcerated. *Id.* Here, the trial court saw no evidence of meaningful engagement in any programs or services, including during the periods when Father was not incarcerated. Moreover, during periods between incarceration, Father testified that his paycheck typically lasted one day due to the amount he spent on illegal drugs. Tr. p. 64. The dispositional order in this case clearly required Father to stop using illegal drugs in order to regain custody of A.B., and he agrees that he spent his money on "pills, heroin, amphetamines, whatever [he] could get[.]" *Id.* Incarceration is only one factor in determining whether the condition that led to the removal of a child will be remedied. *Id.* at 648. It is the other factors, like the relationship with the child and the effort made to participate in programs that develop parenting skills, which distinguish *K.E.* from this case.

the parent to those of the child. *Id.* The court need not wait until a child is irreversibly harmed before terminating the parent-child relationship. *Id.* We have previously held that the recommendation by both the FCM and CASA to terminate parental rights, in addition to evidence that the conditions resulting in removal will not be remedied, is sufficient to show by clear and convincing evidence that termination is in the child's best interests. *Id.* at 1158-59.

[26] Here, both the CASA and the FCM recommended termination of parental rights, and there is evidence that the conditions resulting in removal will not be remedied. However, Mother and Father contend that Indiana Code section 31-35-2-4.5(d)(1) "provides a mechanism that allows parents to request that a termination proceeding be dismissed if certain circumstances apply." Appellants' Br. p. 20. The statute provides in pertinent part:

> A person described in section 4(a) of this chapter may file a motion to dismiss the petition to terminate the parent-child relationship if any of the following circumstances apply:
>
> > (1) That the current case plan prepared by or under the supervision of the department or the probation department under IC 31-34-15, IC 31-37-19-1.5, or IC 31-37-22-4.5 has documented a compelling reason, based on facts and circumstances stated in the petition or motion, for concluding that filing, or proceeding to a final determination of, a petition to terminate the parent-child relationship is not in the best interests of the child. A compelling reason may include the fact that the child is being cared for by a custodian who is a relative (as defined in IC 31-9-2-107(c)).

I.C. § 31-35-2-4.5(d)(1). Mother and Father further argue that the language of the statute indicates that A.B.'s placement with Father's aunt and uncle is a "compelling reason" to conclude that termination of their parental rights is not in A.B.'s best interests and that the "effect on A.B. of giving the parents more time will be minimal." Appellants' Br. p. 21.

[27] First, to clarify, Section 31-35-2-4.5(d)(1) provides a mechanism for a "person described in section 4(a) of this chapter" to file a motion to dismiss the petition to terminate the parent-child relationship. Indiana Code section 31-35-2-4(a) describes three people: "(1) The attorney for the department. (2) The child's court appointed special advocate. (3) The child's guardian ad litem." It does not include parents. Section 31-35-2-4.5(d)(1) does not provide a special statutory mechanism for parents to request dismissal of a termination proceeding.

[28] Additionally, Section 31-35-2-4.5(d)(1) permits, but does not require, the dismissal of a petition to terminate parental rights when the child is in the care of a relative. *See, e.g.*, *In re G.H.*, 906 N.E.2d 248, 252 (Ind. Ct. App. 2009); *James v. Pike Cnty.*, 759 N.E.2d 1140, 1144 (Ind. Ct. App. 2001); *M.H.C. v. Hill*, 750 N.E.2d 872, 878 (Ind. Ct. App. 2001). Placement with a relative may provide a "compelling reason" for DCS to request dismissal of its petition for termination of parental rights under the terms of the statute. But such placement does not compel the trial court to find that it is in the best interests of the child to retain the parent-child relationship.

[29] The balance of Mother and Father's argument is, again, a request that we reweigh the evidence, which we will not do. *Bester*, 839 N.E.2d at 147. The trial court's determination that termination of the parent-child relationship is in A.B.'s best interests is supported by the testimony of the CASA and the FCM as well as the two-year history of noncompliance with the dispositional order.

[30] Affirmed.

Bailey, J., and Crone, J., concur.