# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 13 2018, 7:38 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Alice B. Blevins
Bartanen Law Office, LLC
Salem, Indiana

ATTORNEY FOR APPELLEE

William H. Davis
Davis Davis & Layson
Corydon, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Nicole Kingrey,<br>*Appellant-Petitioner,*<br><br>v.<br><br>Michael Kingrey,<br>*Appellee-Respondent.* | August 13, 2018<br><br>Court of Appeals Case No.<br>18A-DR-533<br><br>Appeal from the Harrison Circuit Court<br><br>The Honorable John T. Evans, Judge<br><br>Trial Court Cause No.<br>31C01-1601-DR-16 |

**Robb, Judge.**

# Case Summary and Issue

[1] Nicole Kingrey ("Mother") and Michael Edward Kingrey ("Father") are the parents of one child, B.K. When the parties divorced in 2016, the trial court approved the parties' agreement to share joint legal custody of B.K. with Mother to have primary physical custody and parenting time to be divided approximately equally. In March 2017, Mother filed a petition to modify custody seeking primary legal and physical custody in advance of B.K. enrolling in kindergarten. The trial court found a substantial change had occurred making the current custody arrangements no longer in B.K.'s best interest and granted sole legal and physical custody to Father. Mother now appeals, raising two issues which we consolidate and restate as whether the trial court erred in modifying custody in favor of Father. Concluding the trial court did not abuse its discretion in modifying custody, we affirm.

# Facts and Procedural History

[2] When Mother and Father were divorced in June 2016, they agreed to the following regarding B.K.:

- They would have joint legal custody of her with Mother being the primary physical custodian.
- That it was in B.K.'s best interests to *not* follow the Indiana Parenting Time Guidelines; rather, because of their work schedules, the parties would share parenting time equally.
- Father would pay $70.00 per week in child support.
- Father would maintain insurance for B.K.
- Father would be responsible for all controlled child rearing expenses.

- They would alternate claiming B.K. for tax purposes, beginning with Mother claiming her in 2016.

In February 2017, the parties agreed to modify parenting time and child support. Pursuant to their agreement, specific parenting time was altered but still shared equally, and Father's child support obligation was lowered to $25.00 per week. The parties also agreed that B.K. would attend kindergarten at New Middletown.

In March 2017, Mother filed a petition to modify custody, alleging the following substantial and continuing change of circumstances:

> a. Father has failed to maintain a stable and consistent residence for [B.K.]
> b. Father has failed to meet [B.K.]'s basic needs and provide her with necessities during his parenting time.
> c. The Father maintains [B.K.] in a tumultuous environment during his parenting time, or leaves [B.K.]with relatives and does not remain with her in violation of Mother's rights of first refusal.
> d. The parties do not reside in the same school system and [B.K.] is approaching school age and a determination needs to be made to provide [B.K.]with a stable educational environment.

Appellant's Appendix, Volume 2 at 28-29. Accordingly, Mother requested custody be modified to grant her primary legal and physical[1] custody of B.K.

---

[1] Pursuant to the parties' agreements, Mother already had primary physical custody of B.K. but the parties had also agreed to a parenting time schedule that granted them roughly equal time with B.K.

[4]     After the parties were unable to reach an agreement through court-ordered mediation, the trial court held a hearing on February 5, 2018. At that time, B.K. was in preschool and would be starting kindergarten in the fall. Mother and Father shared a 3/2/2 parenting time arrangement where one week Mother had B.K. Monday through Wednesday, Father had B.K. Thursday and Friday, and Mother had B.K. Saturday and Sunday. The parties would then switch the schedule the following week. B.K.'s primary childcare was with Father's dad and stepmom.

[5]     Father lives with his wife and her two children. When B.K. stays with Father, she shares a room with one of her stepsisters. Father drives a truck locally and goes to work at 6:00 a.m., getting off anywhere between 2:30 p.m. and 5:00 p.m. On school days when B.K. is with Father, she gets up at approximately 5:30 a.m., and either Father or his wife drops her off with relatives on the way to work. B.K. gets ready and goes to preschool from there. Preschool ends before noon, and B.K. goes to either Father's dad and stepmother's home or to Father's mother's home for the afternoon. Whichever parent has B.K. that day picks her up from there. Father wishes B.K. to go to Morgan Elementary in Palmyra, Indiana, for kindergarten and wishes to continue this arrangement for transporting her to and from school.

[6]     At the time of the February 2017 agreement, Mother lived in Brandenburg, Kentucky, with her fiancé. By the time of the February 2018 hearing, however, Mother was living with her mother in Central, Indiana, while she and her fiancé build a house in Webster, Kentucky, next to her fiancé's parents' home.

Mother and her fiancé are expecting a child together in the fall of 2018, and at the new house, each child will have a bedroom. Mother wishes B.K. to go to kindergarten in Meade County, Kentucky, where the new house will be. Mother will be on maternity leave when B.K. starts kindergarten, but when she goes back to work in Floyds Knobs, she will avail herself of Meade County schools' early drop off before school starts at 8:00 a.m., and Mother has arranged for Father's stepmother to pick B.K. up from school in the afternoons. Father's dad and stepmother live in Elizabeth, Indiana, approximately fifteen minutes from the Meade County school and approximately thirty minutes from Morgan Elementary.

[7] Mother testified in relation to the allegations of her petition that Father had moved four or five times between three different residences and had changed jobs three times since February 2017. She also testified that in the past, Father had always taken B.K. to his dad and stepmom's when he needed childcare, and she "[a]bsolutely" supports them as caregivers for B.K. because "[t]hat's where she's always gone until [Father] took her somewhere else." Transcript, Volume 2 at 18. Father had recently started taking B.K. to his mother's more often, however, and Mother has concerns about that arrangement because she alleges Father's mother has a criminal record, does not have a driver's license, has too many people staying in her house, and smokes around B.K., who has asthma. Mother testified that B.K. often does not have shoes or a coat when Mother picks B.K. up from Father's mother. Mother also noted B.K. had indicated she would rather stay with Father's stepmom than his mother.

Mother believed the early hours and constantly changing schedule were causing B.K. stress, as she acts out, is extremely tired, and has trouble focusing in preschool. Mother wanted to change the 3/2/2 schedule to a more traditional parenting time structure where B.K. would be with her during the week and have alternating weekends with Father so her situation would be stable throughout the school week.

[8] Father denied his mother—or anyone in her house—was a smoker, and although he acknowledged that his mother did not have a driver's license, he noted that she never drives B.K. anywhere. Either his sister or grandmother drives B.K. to school when B.K. is at his mother's, and his grandmother picks her up when she is returning to his mother's after school. Father believes attending Morgan Elementary would be in B.K.'s best interest because she had made friends in her preschool who would be going to Morgan. Moreover, it is "in this area . . . where she's always been and . . . [t]here's tons of family and very, very close friends around here." Tr., Vol. 2 at 50-51. Father also noted that if the court felt it best to keep the equal parenting time schedule, he still felt Morgan Elementary is within reason for both parties, "but if it is fifty/fifty my recommendation is maybe a Monday to Monday type schedule. . . . [I]t is still beneficial for [B.K.] to be in the same household for a solid week at a time." *Id.* at 51.

[9] On February 6, 2018, the trial court entered the following order:

7.  This Court has considered all relevant factors, including those set forth in Indiana Code 31-17-2-8.  There has been a substantial change in more than one of the enumerated factors.

8.  This Court also has considered all the relevant factors, including those set forth in Indiana Code 31-17-2-15.  There has been a substantial change in more than one of the enumerated factors.

9.  Joint legal custody is not in the best interest of the child.

10.  It is in the best interest of [B.K.] that Father have sole legal and physical custody.

11.  Therefore, the Court grants Father sole legal and physical custody of [B.K.]  Mother shall have parenting time *every* weekend from Friday at 6:00 p.m. until Sunday at 6:00 p.m. *except* the last weekend of every month which shall be Father's weekend.  (A weekend of the month shall be determined by the month to which Saturday belongs.)  Holidays, special days, and summers shall be divided as described in the Indiana Parenting Time Guidelines.  Father shall have all other parenting time. The parent whose parenting time is beginning shall pick the child up from the home of the parent whose parenting time is concluding.

* * *

15.  There shall be no smoking in [B.K.]'s presence due to her asthma.  Each parent is responsible for insuring [sic] that third parties do not smoke in [B.K.]'s presence.

*Id.* at 32-33.  Mother now appeals.

# Discussion and Decision

## I. Standard of Review

[10] Mother claims the trial court abused its discretion in granting sole legal custody of B.K. to Father. We review custody modifications for an abuse of discretion "with a preference for granting latitude and deference to our trial judges in family law matters." *Werner v. Werner*, 946 N.E.2d 1233, 1244 (Ind. Ct. App. 2011), *trans. denied*. This is because it is the trial court that observes the parties' conduct and demeanor and hears their testimony firsthand. *In re Paternity of C.S.*, 964 N.E.2d 879, 883 (Ind. Ct. App. 2012), *trans. denied*. We will not reweigh the evidence or judge the credibility of the witnesses. *Id.* Rather, we will reverse the trial court's custody determination only if the decision is "clearly against the logic and effect of the facts and circumstances or the reasonable inferences drawn therefrom." *Id.* (citation omitted). "[I]t is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by the appellant before there is a basis for reversal." *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002). Given our deferential standard of review, it is relatively rare to reverse a trial court's decision regarding child custody on appeal, although it is not impossible. *See Montgomery v. Montgomery*, 59 N.E.3d 343, 350 (Ind. Ct. App. 2016), *trans. denied*.

# II. Change of Custody

## A. Physical Custody

[11] Mother contends the trial court erred in modifying sole physical custody of B.K. from her to Father. When modifying custody, the trial court is guided by Indiana Code section 31-17-2-21 ("Section 21"), which states modification is only appropriate when it is in the best interests of the child and there is a substantial change in one or more of the factors considered when making an initial custody order. This current iteration of Section 21, dating from 1994, eliminates the prior need to show that an existing custody order is unreasonable and that the change of circumstances is so decisive in nature as to make a change in custody necessary for the welfare of the child; rather, the change in circumstances must be substantial. *Julie C. v. Andrew C.*, 924 N.E.2d 1249, 1258 (Ind. Ct. App. 2010). In turn, Indiana Code section 31-17-2-8 ("Section 8") lists the factors to be considered in making an initial custody determination:

> (1) The age and sex of the child.
>
> (2) The wishes of the child's parent or parents.
>
> (3) The wishes of the child, with more consideration to the child's wishes if the child is at least (14) years of age.
>
> (4) The interaction and interrelationship of the child with:
>
> > (A) the child's parent or parents;

(B) the child's sibling; and

(C) any other person who may significantly affect the child's best interests.

(5) The child's adjustment to the child's:

(A) home;

(B) school; and

(C) community.

(6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic or family violence by either parent.

(8) Evidence that the child has been cared for by a de facto custodian . . . .

[12]  Here, the trial court stated that it considered all the relevant factors in Section 8, found substantial changes in multiple factors, and determined that a change of custody was in B.K.'s best interests. Although Mother recites the standard of review when a trial court makes findings of fact and conclusions thereon, *see* Appellant's Brief at 6-7, the trial court did not actually make any findings of fact detailing which factors had substantially changed or how B.K.'s best interests were served by a change in custody. We note, however, that the trial court is not *required* to make findings of fact in modifying custody unless requested to do

so by a party. *In re Paternity of P.R.*, 940 N.E.2d 346, 351 (Ind. Ct. App. 2010). Section 21 does not require the trial court to specify which factors have substantially changed. *Kanach v. Rogers*, 742 N.E.2d 987, 989 (Ind. Ct. App. 2001). "[A]ll that is required to support modification of custody under [Section 21] is a finding that a change would be in the child's best interests, a consideration of the factors listed in [Section 8], and a finding that there has been a substantial change in one of those factors." *Nienaber v. Nienaber*, 787 N.E.2d 450, 456 (Ind. Ct. App. 2003).

[13] We note first that Mother points out the modification is "in excess of that requested by Father." Appellant's Br. at 17. It is true that Father did not specifically request that primary physical or legal custody be changed to him. However, if one parent files a custody modification request, a trial court may instead modify custody in favor of the other parent, even if that parent did not file a cross-petition to modify custody, where it is clear from the record that the other parent desired custody. *Bailey v. Bailey*, 7 N.E.3d 340, 344 (Ind. Ct. App. 2014) (citing *Meneou v. Meneou*, 503 N.E.2d 902, 904-05 (Ind. Ct. App. 1987)). Father did not have custody thrust upon him unwillingly here; it is clear from the record that he desired to retain at least the equal parenting time with B.K. that he was already exercising.[2]

---

[2] In addition, Father filed a brief in this appeal defending the trial court's modification in his favor and requests the trial court's judgment be affirmed.

[14] Both parties agreed the current 3/2/2 parenting time schedule was not sustainable once B.K. began kindergarten. Mother noted that "we each miss out on a lot of things with school because with the back and forth we can't keep up with what's going on each day with the other. And [B.K.] stays really stressed out with the back and forth." Tr., Vol. 2 at 10. Mother testified that she wanted B.K. to have "the same thing throughout the week for school is all." *Id.* at 13. And she wanted to have B.K. with her during the week because she thought B.K. would "really, really struggle" if she was with Father for a week at a time due to her "very, very close dependent relationship with me." Tr., Vol. 2 at 64. Mother wanted to have B.K. attend school in Kentucky and to have primary physical custody so B.K. would be with her for school days.[3] Father wanted B.K. to attend school in Indiana.[4]

[15] The record supports the trial court's determination that there was a substantial change with respect to at least one of the factors listed in Section 8 – namely, B.K. had reached school age, *see* Ind. Code § 31-17-2-8(1); the parties' wishes with respect to how parenting time was to be divided and their wishes with

---

[3] Because Mother already had primary physical custody pursuant to the parties' agreements, it is unclear why she filed a petition to modify physical custody to grant her what she already had.

[4] When the parties entered into their February 2017 agreement, Mother was living in Brandenburg, Kentucky, and the parties agreed that B.K. would attend New Middletown Elementary School in Corydon, Indiana. By the time of the hearing on Mother's petition to modify custody, both parties had moved and neither party advocated for that school. We do note, however, that at the same time Mother agreed to the 3/2/2 parenting time schedule, Mother also agreed to B.K. going to kindergarten in Indiana, approximately thirty minutes from her Kentucky home at that time. Morgan Elementary School in Indiana, Father's current choice of school for B.K., is approximately forty minutes from Meade County, Kentucky, the location of Mother's intended new home.

respect to where B.K. would attend school had changed, *see* Ind. Code § 31-17-2-8(2); and Mother was moving to Kentucky, farther away from Father and B.K.'s extended family on both sides, into a new home with her fiancé near her fiancé's family, was expecting another child, and wanted to place B.K. in a school system in which she had no previous ties, *see* Ind. Code § 31-17-2-8(4), (5). Although Mother addresses each factor in Section 8,[5] highlighting those factors and facts that she believes are in her favor, the trial court stated that it had considered each of the relevant factors in light of the testimony adduced at the hearing, and Mother's argument essentially amounts to a request we reweigh the evidence and find in her favor. We "are in a poor position to look at a cold transcript of the record, and conclude that the trial judge, who saw the witnesses, observed their demeanor, and scrutinized their testimony as it came from the witness stand, did not properly understand the significance of the evidence." *Steele-Giri v. Steele*, 51 N.E.3d 119, 124 (Ind. 2016) (citation omitted). In order to reverse a trial court's ruling, the evidence must positively require the conclusion the appellant advocates. *Id.* Mindful of that standard and of the substantial deference we accord trial courts in family law matters, we

---

[5] Mother "specifically note[s] a disagreement with the ruling" with respect to "[e]vidence that the child has been cared for by a de facto custodian . . . ." Appellant's Br. at 9, 12-13 (citing Ind. Code § 31-17-2-8(8)). It is difficult to discern what the "specific disagreement" is given that the trial court did not make any specific findings about this factor. However, Mother references evidence that B.K. was routinely cared for by Father's father and stepmother when not at school. Mother apparently misunderstands the nature of a "de facto custodian." A "de facto custodian" is defined by Indiana Code section 31-9-2-35.5 as a person "who has been the primary caregiver for, and financial support of, a child who has resided with the person for at least . . . one (1) year if the child is at least three (3) years of age." Clearly, Father's father and stepmother, no matter how often they provide care for B.K., are not de facto custodians under this definition, and this factor is, therefore, not relevant to a custody modification decision.

cannot say the trial court abused its discretion by modifying physical custody of B.K. and placing her primarily in Father's care.

## B. Legal Custody

[16] Mother contends the trial court erred in modifying legal custody because "[n]either parent had requested the Court modify the legal custody of the child . . . ." *Id.* at 17. Contrary to this assertion, however, Mother's petition states that she is requesting "to be granted *primary legal* and physical custody of [B.K.]" Appellant's App., Vol. 2 at 29 (emphasis added). Therefore, the trial court appropriately considered whether joint legal custody remained a viable option.

[17] As with determinations regarding modification of physical custody discussed above, the trial court is still guided by Sections 21 and 8 when modifying legal custody. *See Miller v. Carpenter*, 965 N.E.2d 104, 109 (Ind. Ct. App. 2012). But also relevant to whether a court should modify joint legal custody to sole legal custody is whether there has been a substantial change in one or more of the factors the trial court considered when making the initial award of joint custody. *Julie C.*, 924 N.E.2d at 1260. Those factors, enumerated in Indiana Code section 31-17-2-15 ("Section 15"), are:

> (1) the fitness and suitability of each of the persons awarded joint custody;
>
> (2) whether the persons awarded joint custody are willing and able to communicate and cooperate in advancing the child's welfare;

(3) the wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age;

(4) whether the child has established a close and beneficial relationship with both of the persons awarded joint custody;

(5) whether the persons awarded joint custody:

  (A) live in close proximity to each other; and

  (B) plan to continue to do so; and

(6) the nature of the physical and emotional environment in the home of each of the persons awarded joint custody.

[18] As with physical custody, the trial court stated that it had considered all the relevant factors in Section 15 regarding legal custody and had found a substantial change in more than one of those factors. Again, the trial court did not specify which factors it found to have substantially changed, but it concluded that joint legal custody was no longer in B.K.'s best interests. In deciding whether joint legal custody would be in the best interests of the child, it is "a matter of primary, but not determinative, importance that the persons awarded joint custody have agreed to an award of joint legal custody." Ind. Code § 31-17-2-15; *see Higginbotham v. Higginbotham*, 822 N.E.2d 609, 612 (Ind. Ct. App. 2004) (affirming trial court's modification of joint legal custody to sole legal custody in mother even though parents agreed to continue joint custody). Although the parties initially agreed to joint legal custody of B.K., it appears from Mother's petition that she, at least, no longer wishes to share joint

custody. The parties cannot agree where to enroll B.K. in school and have recently begun to disagree about which family members are appropriate to care for B.K. Mother is moving such that parties will live even farther from one another than they already did.

[19] As with the physical custody determination, Mother again addresses each of the factors to be considered in a decision regarding joint custody, highlighting those facts that would support continuing joint legal custody. The trial court is in the best position to weigh the evidence and assess witness credibility, and we cannot say it abused its discretion by modifying joint legal custody to sole legal custody in Father, especially considering the decision for Father to exercise primary physical custody of B.K.

## Conclusion

[20] The trial court considered each of the relevant statutory factors bearing on a modification of custody, found a substantial change in multiple factors, and concluded B.K.'s best interests were best served by modifying custody. Finding no abuse of discretion, we affirm the trial court's decision awarding sole physical and legal custody of B.K. to Father.

[21] Affirmed.

Baker, J., and May, J., concur.